**BETHLEHEM MINES CORPORATION, a West Virginia corporation,**

v.

**UNITED MINE WORKERS OF AMERICA et al., Appellants.**

**No. 71-2004.**

United States Court of Appeals, Third Circuit.

Argued Dec. 1, 1972.

Decided Feb. 12, 1973.

Rehearing En Banc Denied April 20, 1973.

Resubmitted Under Third Circuit Rule 12(6) on April 23, 1973 as a Result of an Order of April 20, 1973.

Rehearing Denied April 24, 1973.

Eugene A. Creany, Ebensburg, Pa., Edward L. Carey, Washington, D. C., Lloyd F. Engle, Jr., Melvin P. Stein, Kuhn, Engle & Blair, Pittsburgh, Pa., for appellants.

Donald B. Heard, Kathleen A. Merry, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff-appellee; Wm. J. Tattersall, Daniel C. Mills, Jr., Bethlehem, Pa., Bethlehem Mines Corp., of counsel.

Before BIGGS, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this appeal, defendant Local 1368 challenges an order of the district court adjudging it in civil contempt.

Plaintiff, Bethlehem Mines Corp., brought suit under section 301 of the Labor-Management Relations Act of 1947 against the United Mine Workers of America, District No. 2, and Local 1368. Alleging an illegal strike in violation of the collective bargaining agreement, Bethlehem Mines sought to compel the defendants to return to work and to arbitrate the dispute.

On February 18, 1971, the district court held a hearing on plaintiff's application for a temporary restraining order and, after noting that the involved employees had returned to work, decided to take no action other than to retain jurisdiction. On February 26, 1971, after

another work stoppage, the district court held a further hearing and entered a temporary restraining order enjoining the strike and directing arbitration of the dispute. On March 4, 1971, the temporary restraining order was continued until March 9, 1971. After further proceedings, the district court, at a hearing on March 9, 1971, *orally* continued the temporary restraining order as a preliminary injunction, without objection from the defendants. Defendants neither moved to vacate the temporary restraining order or the preliminary injunction continuing it, nor did they file an appeal.

On May 26, 1971, the district court, on plaintiff's motion, issued a rule to show cause why defendant Local 1368 should not be adjudged in civil contempt because of further work stoppages. Hearing on this motion was continued. On August 19, 1971, however, after another work stoppage, plaintiff filed a second motion for a rule to show cause and a motion for adjudication of civil contempt.

On August 23, 1971, the district court held a hearing on the motions filed on August 19. The next day the district court filed a memorandum and findings of fact and conclusions of law, dated August 23, 1971, and a memorandum and order adjudging defendant Local 1368 in civil contempt.

Both in briefs and at oral argument, Local 1368 has mounted its assault on the district court's order holding it in civil contempt, principally upon two grounds: (1) because of the Norris-LaGuardia Act the district court lacked the power to grant injunctive relief and erred in ruling that, under Boys Markets, Inc. v. Retail Clerks, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), it had such power; (2) the district court did not have jurisdiction because it failed to make required findings of fact and conclusions of law in support of the preliminary injunction.

Although the Federal Rules of Civil Procedure provide for the filing of findings of fact and conclusions of law in support of an order granting a preliminary injunction, a failure to do so simultaneously with the decree does not deprive a court of *jurisdiction* and of power to adjudge in civil contempt those violating such order. *Cf.* United States v. Ingersoll-Rand Co., 320 F.2d 509 (3d Cir. 1963).

The Norris-LaGuardia Act's restriction on federal court power to grant injunctive relief in labor disputes is, in the posture of the present case, not controlling with respect to the question whether the court has the power to hold a defendant in contempt for refusing to obey its order.[1] While the Norris-LaGuardia Act delimits the power of

---

1. Local 1386 has argued that Emery Air Freight Corp. v. Local 295, 356 F.Supp. 974, (E.D.N.Y., 1972) (*Emery II*), on remand from, Emery Air Freight Corp. v. Local 295, 449 F.2d 586 (2d Cir. 1972) (*Emery I*) bears upon the issues presented in this appeal. In *Emery I*, the Second Circuit examined a factual situation similar to that in the present case, except that there the union appealed the underlying preliminary injunction as well as the order of civil contempt. The court reversed the preliminary injunction as improper under the Norris-LaGuardia Act and the *Boys Markets* case, and set aside for reconsideration by the district court the order of civil contempt that had been issued without a prior hearing.

The Second Circuit specifically left open for consideration by the district court the question which we address here: "Since compliance with the Norris-LaGuardia Act is a 'jurisdictional' requirement, say appellants, the district court had no 'jurisdiction' to enter the orders they allegedly ignored and, therefore, the contempt must be set aside. The questions raised by appellants . . . are substantial. However, we need not decide these delicate issues. . . . " 449 F.2d at 592.

On remand, in *Emery II*, the district court reconsidered the order of civil contempt and in a rather conclusory statement held: "This Court has fully reconsidered this matter in the light of the strong suggestions of the Circuit Court and concludes that the district court had no original jurisdiction." 356 F.Supp. at 976. Although *Emery II* lends authority to Local 1368's position in the present

federal courts to issue injunctions, it does not remove federal jurisdiction to adjudicate controversies properly before the court. Even assuming, arguendo, that the district court may be ultimately deemed without power to grant a particular form of relief, that does not imply that the court is entirely without jurisdiction to determine, by an appropriate hearing, whether to consider the matter at all.

■ In this case, to ascertain whether it had the power to grant injunctive relief, the district court had to examine the applicability of the Norris-La-Guardia Act and the Supreme Court's decision in *Boys Markets, supra.* The court certainly had jurisdiction to make that determination. And after the district court held that, under *Boys Markets,* it had the power to grant injunctive relief, any disagreement with that holding should have been settled by the orderly process of appellate review, not by purposeful disobedience of an order rendered by a court of competent jurisdiction. Under these circumstances, to permit by an appeal of the contempt citation an attack upon the basic order that was violated would undermine respect for legal process. Thus, the district court had jurisdiction to enter its orders in this case, at least jurisdiction sufficient to uphold an order of civil contempt.

■ At oral argument and in supplemental briefs, it was suggested that the district court's non-compliance with F.R.Civ.P. 58 may require reversal in this case. That rule states in part: "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth. . . ." Here, the district court entered a temporary restraining order and later continued it *orally* as a preliminary injunction. Since the temporary restraining order

had expired by its own terms when the preliminary injunction was granted, if defendant violated anything, it must have been the preliminary injunction. It was contended at oral argument that the preliminary injunction, never set forth on a separate document, was ineffective and that Local 1368, therefore, violated no valid court order.

Rule 58, however, was intended primarily to clear up the uncertainties of determining when, for the purpose of appellate review, there is a final, appealable judgment. *See e.g.* United States v. Chambers, 429 F.2d 410 (3d Cir. 1970); Levin v. Wear-Ever Aluminum, Inc., 427 F.2d 847 (3d Cir. 1970); Pure Oil v. Boyne, 370 F.2d 121 (5th Cir. 1966); *cf.* Healy v. Pennsylvania R. Co., 181 F. 2d 934 (3d Cir. 1950); In re D'Arcy, 142 F.2d 313 (3d Cir. 1944). In addition, the purpose of Rule 58 is to insure that parties know what is required of them, that the public has notice of the entry of judgments, and that an appellate court has sufficient information upon which to base its review.

Under the facts of this case, none of these purposes of Rule 58 would be thwarted. There is no question involved of the time for filing an appeal or of any other matter dealing with an appeal. Defendant never attempted to appeal the granting of preliminary relief, nor has it alleged that it was in any way prevented from doing so. Moreover, the mere fact that the preliminary injunction was not in writing and set forth in a separate document has not been claimed, and, in the context of the present dispute, would not appear to prejudice anyone.

The parties were present in court, either personally or by counsel, during the hearings on the temporary restraining order, when the preliminary injunction was granted, and also in subsequent con-

case, we decline to follow it since the absence of supportive reasoning for the district court's conclusory statement does not convince us that the *Emery II* court appreciated the distinction between jurisdiction to adjudicate a controversy and power

to grant a particular form of relief. This is in contradistinction to our holding that the district court in the present case did not lack *jurisdiction* to adjudicate the controversy and to adjudge Local 1368 in civil contempt.

ferences with the judge. Because the oral preliminary injunction simply continued the earlier temporary restraining order which was set forth in a separate document, the record makes clear that the parties were fully aware of the existence and content of the injunction. No objection was made by the defendant to the granting of injunctive relief, nor was any appeal ever filed. Under these circumstances, we would be exalting form over substance if we were to hold that in failing to enter the preliminary injunction on a separate document, the district court thereby rendered itself powerless to adjudge violations in civil contempt. Accordingly, on the basis of the facts in this case, the failure to set forth the preliminary injunction order in a separate document did not preclude an adjudication of civil contempt.

It should be stressed that Local 1368 pursued here a course of conduct in the clear belief, as the court below found, that such action would violate a valid court order. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review.

The concept of "a government of laws and not of men," describes a critical quality of our political society. So strongly did the framers of the Constitution determine to secure a reign of law that they conferred unusual safeguards on the judicial office. No one, no matter what his position, nor how virtuous his impulse, was to be a judge in his own case.

No type of dispute is more meet for judicial resolution than one calling into question the power of a court to decide. Jurisdictional controversies are hardly appropriate for final determination by the self-interest of a party.

Plaintiff here sought the aid of a court in circumstances attended with some doubt. Only when a court so obviously journeys outside its prescribed range as to be usurping judicial form may an order issued by it be disregarded. Whether a party may be called to the bar of justice is not for that party, himself, to decide.

If a court had been clearly deprived of the power to act in a case, it, of course, could not overcome such lack of power by a baseless or superficial inquiry into the question. Such would be a mere pretext. But that clearly was not the case here. And, in such circumstances, the direction of the court must be sustained, else we would risk rejecting the requirements of the judicial process.

■ By deliberately disobeying the district court, the defendant attempted to take upon itself the power to determine what is law and, in doing so, subjected itself to civil contempt.[2]

An order affirming the judgment of the district court will be entered.

## OPINION SUR PETITION FOR REHEARING

Appellants, United Mine Workers of America, et al., have petitioned for a rehearing of this Court's decision of February 12, 1973, that affirmed a judgment of civil contempt in the amount of $500.-00. They rely primarily upon the ground that the panel failed to perceive a now-proffered distinction between criminal and civil contempt that, it is argued, affects the power of a court to punish for contempt when the validity of the underlying order is questioned.

Insisting that the panel erred in concluding that the validity of the underlying order[1] is not, in the circumstances of this case, a condition precedent to the proper affirmance by this Court of the judgment of civil contempt, appellants quote the following language from United States v. United Mine Workers, 330

---

2. *See* United States v. United Mine Workers of America, 330 U.S. 258, 307, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (Frankfurter, J. concurring).

1. The panel did examine and uphold the district court's jurisdiction to enter the preliminary injunction.

U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), in support of their position:

"It does not follow, of course that simply because a defendant may be punished for criminal contempt for disobedience of an order *later set aside on appeal*, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction *which events prove was erroneously issued,* (citing cases) and a fortiori when the injunction or restraining order was beyond the jurisdiction of the court. . . . If the Norris-LaGuardia Act were applicable in this case, the conviction for civil contempt would be reversed in its entirely." 330 U.S. at 294–295, 67 S.Ct. at 696 (emphasis changed) (citations and footnotes omitted).

Appellants, however, apparently misapprehend the important distinction between this dictum in United States v. United Mine Workers and the present case. In the Supreme Court case, appeals were taken not only from the judgment of contempt, but also from the *underlying order* which the defendants had disobeyed. In the present case, the appellants neither objected to nor appealed from the underlying order, the preliminary injunction.

It is with this distinction in mind that the above quotation must properly be read. Viewed in this way, the Supreme Court was saying only that if the underlying order is reversed or vacated during the orderly course of appellate review, *then* a judgment of civil contempt, though not criminal contempt, must also be set aside. Thus, the Supreme Court described the kind of order to which it was referring as: "an order later set aside on appeal" and "an injunction which events prove was erroneously issued. . . ." 330 U.S. at 295, 67 S.Ct. at 696.[2]

Any doubt that the Supreme Court was distinguishing civil contempt from criminal contempt *only for the purpose of cases in which the disobeyed order was "later set aside on appeal,"* can be dispelled by a careful examination of the cases cited by the Supreme Court to support the proposition that "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued. . . ."[3] 330 U.S. at 295, 67 S.Ct. at 696.

Of the cases cited by the Supreme Court, Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 86 F.2d 727 (2d Cir. 1936) (per curiam), is a good example of the kind of situation to which the Supreme Court was referring. The others are set out in the margin.[4]

---

2. *Cf.* United States v. United Mine Workers, 330 U.S. at 361 n. 26, 67 S.Ct. at 729 (Rutledge, J., dissenting) ("if an injunction is reversed on appeal").

3. The Court cited in the text: Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887); Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 86 F.2d 727 (2 Cir. 1936); S. Anargyros v. Anargyros & Co., 191 F. 208 (C.C.N.D. Cal.1911).

In footnote 61, the Court also cited, as providing *some support,* Leman v. Krentler-Arnold Co., 284 U.S. 448, 453, 52 S.Ct. 238, 76 L.Ed. 389 (1932); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 451–452, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Bessette v. W. B. Conkey Co., 194 U.S. 324, 329, 24 S.Ct. 665, 48 L.Ed. 997 (1904); McCann v. New York

Stock Exchange, 2 Cir., 80 F.2d 211, 214 (1935), cert. denied, 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936).

4. Although cited by the Supreme Court, most, but not all of these cases, *see* note 3, *supra,* present analogous situations. In *Worden,* the defendants appealed from the *final decree,* not just the contempt decree, and thus the Court stated: "We have jurisdiction to review the final decree in the suit and all interlocutory decrees and orders." 121 U.S. at 25, 7 S.Ct. at 820.

In *Krentler-Arnold,* the Court distinguished *criminal* contempt from *civil* contempt solely for the purpose of determining whether a federal court located in Massachusetts which had jurisdiction over a Michigan corporation, the plaintiff, during the proceedings that resulted in the grant

In *Salvage,* the Second Circuit considered an appeal from an order adjudging the defendant in civil contempt for violating a preliminary injunction. The Second Circuit had held in a companion case decided the same day, *in which the defendant appealed the underlying order,*[5] that the preliminary injunction was invalid. In the civil contempt appeal, the court, therefore, reversed the judgment of civil contempt on the ground that:

"It is true that the reversal of the decree does not retroactively obliterate the past existence of the violation, yet on the other hand it does more than destroy the future sanction of the decree. It adjudges that it never should have passed; that the right which it affected to create was no right at all. To let the liability stand for past contumacy would be to give the plaintiff a remedy not for a right but for a wrong, which the law should not do." 86 F.2d 727.

It is clear from this statement that the court based its reasoning upon the fact that the underlying order, upon which the judgment of civil contempt rested, *had been reversed on appeal,* for in practically the same breath it declared: "It is indeed abundantly well settled that a defendant may not dispute the validity of an injunction upon a motion to punish him for contempt." *Id.*

■ In the present case, the appellants would have us hold that even though they "may not dispute the validity of an injunction upon a motion to punish [them] for contempt" *id.,* they should be permitted to so attack the preliminary injunction, which they have not appealed directly, on review of the judgment of civil contempt. Such is not the law. Appellants made no objection to the order granting injunctive relief, nor was any appeal ever filed from such order. Under these circumstances,[6] and in

of injunctive relief for the defendant, lost such personal jurisdiction for the purpose of a later civil contempt proceeding merely because the company committed the alleged contemptuous acts in Michigan, not in Massachusetts.

In *Gompers,* the Court, distinguishing civil from criminal contempt, declined to enter a decree of civil contempt since the parties had settled the dispute and, therefore, the plaintiff did not require such relief.

In *Bessette,* the Supreme Court stated that in a civil contempt case, if it is concluded *on appeal from the final order* of the case that the underlying order was erroneous, "[T]here would in most cases be great propriety in setting aside the punishment which was imposed for disobeying an order to which the adverse party was not entitled." 194 U.S. at 329, 24 S.Ct. at 667.

The original order in *Anargyros* had been reversed on appeal; therefore, the court reversed the judgment of civil contempt.

*McCann* involved a situation in which the plaintiff, who was harassing the defendants, violated a preliminary injunction restraining him from doing so. The Second Circuit, in an opinion by Learned Hand, reversed the judgment of contempt, because it was unclear whether the dis-

trict court had held the plaintiff in *civil* or *criminal* contempt. Far from undermining the panel's decision in the present case, *McCann* supports the present disposition, for Judge Hand stated, *after suggesting that the underlying preliminary injunction was erroneous:* "Although, as we have indicated, that order was erroneous, the plaintiff was nevertheless bound to obey it, provided the judge had jurisdiction. We think that he did have jurisdiction and that the plaintiff was bound to obey, until the order was vacated or reversed." 80 F.2d at 214 (citations omitted). It is interesting to note that this statement and the indication that the underlying order was erroneous were essentially gratuitous, since no appeal had been taken from the preliminary injunction.

5. Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 86 F.2d 725 (2d Cir. 1936) (L. Hand, J.), cert. denied, 308 U.S. 599, 60 S.Ct. 131, 84 L.Ed.2d 501 (1939).

6. In addition to the cases cited in note 3, *supra, see* Jacksonville Paper Co. v. Tobin, 206 F.2d 333, 335 (5th Cir. 1953); Securities and Exchange Comm. v. Okin, 137 F.2d 862 (2d Cir. 1943); Metallizing Engineering Co. v. B. Simon, Inc., 67 F. Supp. 566, 569–570 (W.D.N.Y.1946);

view of the above interpretation of the Supreme Court's *United Mine Workers* case and cases cited therein, the appellants will not be heard to attack the validity of the preliminary injunction upon this appeal of the judgment of civil contempt.

*cf.* Republic Electric Co. v. General Electric Co., 30 F.2d 99 (3d Cir. 1929); *see also* McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949), part of the Jacksonville Paper Co. litigation, *see* 206 F.2d 333, in which the Supreme Court held, inter alia, that an adjudication of civil contempt would be proper even though it was at least questionable whether the administrative order upon which the district court's violated injunction was based was not within the administrator's statutory authority and that the injunction was ambiguous. 336 U.S. at 195–197, 69 S.Ct. at 501 (Frankfurter, J., dissenting). The Court noted, however, that "[T]here was no appeal from [the district court's in-

Because of our previous holding that the district court did not lack *jurisdiction* of the parties and of the subject matter at least sufficient to grant preliminary injunctive relief the present inquiry is at an end.

An order will be entered denying the petition for rehearing by the panel.

junction]. . . . [T]here was a method of relief apart from an appeal. Respondents could have petitioned the District Court for a modification, clarification or construction of the order. . . . But respondents did not take that course either. They undertook to make their own determination of what the decree meant. They knew they acted at their peril." 336 U.S. at 192, 69 S.Ct. at 500. *But cf.* Hyde Construction Co. v. Koehring Co., 388 F.2d 501, 511 (10th Cir. 1968), in which the court permitted an attack upon the underlying order because it was a temporary restraining order which is generally not subject to challenge through *direct* appeal.