In re Travie L. NAIL, Jr. and
Wanda G. Nail, Debtors.

**Bankruptcy No. 94–71692–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Western Division.

May 22, 1996.

C. Taylor Crockett, Birmingham, AL, for Debtors.

R.A. Norred, Birmingham, AL, for Movant.

## ORDER DENYING MOTION FOR RELIEF FROM STAY

### Filed by William J. Wade, as trustee of Mid–State Trust III

BENJAMIN COHEN, Bankruptcy Judge.

The matter subject to this order is a *Motion for Relief from Stay* filed on February 16, 1996 by William J. Wade, as trustee of Mid–State Trust III. The motion seeks to confirm the movant's foreclosure of the debtors' residence. That foreclosure occurred after this Court orally granted the debtors' motion to reinstate their chapter 13 case but before the Court entered a written order on the same matter. A hearing on the motion for relief was held on April 15, 1996. C. Taylor Crockett, the attorney for the Debtors; and R.A. Norred, the attorney for William J. Wade as Trustee of Mid–State Homes Trust III, appeared. The matter was submitted to the Court on the oral and written arguments of counsel and agreed upon facts.[1]

### I. Issues

The technical issue before the Court is whether an oral ruling by the Court reinstating the debtors' case was effective in resurrecting the automatic stay provision of the Bankruptcy Code thereby avoiding the movant's foreclosure of the debtors' residence, a foreclosure that occurred after the oral ruling but before a written order was entered.

The practical issue before the Court is what would occur if the Court's oral order were not effective.

### II. Findings of Fact

■ The debtors filed their chapter 13 bankruptcy case on August 26, 1994. The case was dismissed on September 14, 1995. On September 19, 1995 the debtors filed a *Motion to Reinstate* their case. On September 28, 1995 notice of the filing of the motion and the setting of a hearing on the motion was given to all scheduled creditors. The movant was one of those creditors and con-

---

1. While the matter before the Court is a motion for relief from stay, the parties and the Court have treated the motion as a contest of the movant's foreclosure of its mortgage on the debtors' residence. Because little evidence was presented relating to the merits of the motion for relief from stay, the Court has not considered the mo-

tion as a motion requesting post-reinstatement relief except to the extent that the movant seeks ex post facto confirmation of its foreclosure. If the movant desires to institute future foreclosure proceedings against the debtors, the movant may file a new motion.

## 924

ceded at the hearing on this matter that it did in fact receive notice of the filing. A hearing on the motion was held on October 25, 1995. The movant did not attend the hearing. At the hearing the Court orally granted the motion to reinstate on the condition that a direction for deduction be sent to Mr. Nail's employer. Immediately after that ruling the courtroom deputy attending the hearing made a computer entry of that ruling. After the hearing the same deputy created a paper copy of the oral ruling. The case manager assigned to this case placed that copy in the Court's case file on October 25, 1995, along with an appearance sheet of those attending the October 25 hearing. On November 7, 1995 the chapter 13 trustee sent a Direction for Deduction to Mr. Nail's employer as directed by the Court's oral ruling. On November 21, 1995 the movant foreclosed on the debtors' home. On Decem-

ber 20, 1995 the Court entered a written order granting the debtors' *Motion to Reinstate.*[2] On December 21, 1995 that order, along with the courtroom deputy's written copy of the ruling, and the Court's appearance sheet of those attending the hearing were entered on the Court's case summary docket.[3]

### III. Contentions

The movant argues that upon dismissal of the debtors' case that it was free to exercise its state law remedies and that regardless of this Court's oral order reinstating the debtors' bankruptcy case, the movant was free to foreclose the mortgage it holds on the debtors' residence. The movant also contends that this Court's oral ruling reinstating the debtors' case does not have any retroactive effect on the exercise of its state law remedies. The debtors contend that this Court

---

**2.** On January 11, 1995 the December 20, 1995 order was amended to reflect an action involving a creditor not associated with the instant matter.

**3.** The Court may take judicial notice of the documents in the debtors' file. *Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) (court may take judicial notice of and give effect to its own records in another, but interrelated, proceeding, so that district court could take judicial notice of pendency of application for discharge in prior bankruptcy proceedings and thereby preclude discharge in a second voluntary proceeding in respect to the same debts as listed in first proceeding); *Cash Inn of Dade, Inc. v. Metropolitan Dade County,* 938 F.2d 1239 (11th Cir.1991) (district court may take judicial notice of public records within its files relating to particular case before it or to other related cases); *ITT Rayonier, Inc. v. U.S.,* 651 F.2d 343 (5th Cir.1981) (court may take judicial notice of its own records or of those of inferior courts); *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260 (5th Cir.1978) (trial court did not err in taking judicial notice of materials in court's own files from prior proceedings); *State of Fla. Bd. of Trustees of Internal Imp. Trust Fund v. Charley Toppino & Sons, Inc.,* 514 F.2d 700 (5th Cir.1975) (it is not error for a district court to take judicial notice of related proceedings and records in cases before that court); *Aloe Creme Lab., Inc. v. Francine Co.,* 425 F.2d 1295 (5th Cir.1978) (where it was contended on motion for summary judgment that issues had theretofore been decided adversely to plaintiff by reason of a judgment entered in another case brought by same plaintiff, district court had right to take notice of its own files and records, and had no duty to "grind the same corn a second time."); *Soley v. Star & Herald*

*Co.,* 390 F.2d 364 (5th Cir.1968) (judicial notice of a court's prior cases is permitted to support grant of a motion for summary judgment); *Ackermann v. United States,* 178 F.2d 983 (5th Cir. 1949) (in motion to set aside judgment, court could take judicial notice of its own records in related litigation). *See also, Job v. Calder (In re Calder),* 907 F.2d 953 (10th Cir.1990) (bankruptcy court properly took judicial notice of contents of debtor's Statement of Affairs and Schedule B–1 when denial of discharge was sought for making of false oath or account in or in connection with bankruptcy case); *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.),* 712 F.2d 206 (5th Cir.1983) (a court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom); *Mann v. Shepard (In re Gervich),* 570 F.2d 247 (8th Cir.1978) (bankruptcy court properly took judicial notice of bankrupt's verified schedule of creditors revealing that he was indebted at time agreement transferring property to him and his wife was entered into and that at least some of those debts were still owed at time petition in bankruptcy was filed); *ITT v. Lam (In re Colorado Corp.),* 531 F.2d 463 (10th Cir.1976) (bankruptcy judge properly took judicial notice of files of court relating to the controversy as to whether claims of foreign creditors could be allowed for purposes of voting for trustee in bankruptcy); *Woodmar Realty Co. v. McLean (In re Woodmar Realty Co.),* 294 F.2d 785 (7th Cir.1961), *cert. denied,* 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962) (bankruptcy court was duty bound to take judicial notice of its records and files in cause, and it was duty of reviewing court to take notice of facts which had come to its knowledge through records presented to it on several appeals in same case).

may, with its equitable powers, set aside the mortgage foreclosure. For the reasons expressed below the Court finds that the foreclosure is due to be set aside.

## IV. Conclusions of Law

### A. Automatic Stay

In *Carver v. Carver,* 954 F.2d 1573 (11th Cir.1992), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992) the Court of Appeals for the Eleventh Circuit discussed the effect of the automatic stay provision of the Bankruptcy Code. For the court, Circuit Judge Peter T. Fay wrote:

> The automatic stay provisions of the Bankruptcy Code are quite broad. 11 U.S.C. § 362(a) provides in pertinent part: (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.... Under this provision, all proceedings against the debtor or the debtor's property are stayed during the pendency of the bankruptcy proceedings. Unless the action comes under an exception in 11 U.S.C. § 362(b) or a party seeks relief from the stay under 11 U.S.C. § 362(d), the stay remains in effect until the case is disposed of by the court. 11 U.S.C. § 362(c). This stay relieves the debtor from financial pressure during the pendency of bankruptcy proceedings. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97 (hereinafter H.R.Rep.). However, the stay also protects creditors by preventing the premature disbursement of the bankruptcy debtor's estate. "With-

out it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." *Id.,* 1978 U.S.C.C.A.N. at 6297; see also *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1069 (5th Cir.1986) ("The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment.").

*Id.* at 1576.

This nation's bankruptcy process functions because of the automatic stay provisions of 11 U.S.C. § 362. Without those provisions, and creditors' usual compliance with those provisions, that process would fail. Whether it is invoked by the filing of a bankruptcy petition or through an oral or written order of a court, the Bankruptcy Code's automatic stay must be respected.

If a house were the object of a motion for relief and the bankruptcy court denied that motion, may the mortgagee of that house run from bankruptcy court to state court and file foreclosure documents in an attempt to begin proceedings before the bankruptcy court has the opportunity to enter a written order? If a vehicle were the object of a motion for relief from stay and the bankruptcy court denied that motion, may a secured creditor have its repossession agent tow the car from the bankruptcy court parking lot before the debtor was able to drive the car away or before the bankruptcy court was able to enter a written order denying the relief requested?[4]

In the instant case the creditor was given notice that the debtors had filed a motion to reinstate their case; a hearing was held on that motion; the creditor chose not to attend the hearing; and this Court entered an oral ruling granting the motion to reinstate. The creditor completed a foreclosure of the debtors' home after the Court's oral ruling. The Court entered a written order after the fore-

---

**4.** Does the issue in the instant matter become one of whether the movant had notice of the reinstatement? Did the movant, because it had knowledge of the hearing of the motion to reinstate, have a duty to inquire about the result of the hearing on the motion to reinstate before it

proceeded with its foreclosure? What if this were a situation of an initial filing of a bankruptcy one day before a scheduled foreclosure and the mortgagee completed the sale because it did not receive notice of the bankruptcy filing?

closure. If this Court did not hold that the automatic stay provision of the Bankruptcy Code was effective against the movant when the Court made its oral ruling, the process described by Judge Fay in *Carver* could not exist.[5]

### (1) Collateral Bar Rule

In *In re Novak*, 932 F.2d 1397 (11th Cir. 1991) the Court of Appeals for the Eleventh Circuit described what has been termed the "collateral bar rule." For the court, Chief Circuit Judge Gerald B. Tjoflat wrote:

> It is well established that an order duly issued by a court having subject-matter jurisdiction over a case or controversy before it, and personal jurisdiction over the parties to that case or controversy, must be obeyed, regardless of the ultimate validity of the order. *Maness v. Meyers*, 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975); *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947); *United States v. Dickinson*, 465 F.2d 496, 509 (5th Cir. 1972). Disobedience of an invalid court order may be punished as criminal contempt. As Chief Judge John Brown explained: *"People simply cannot have the luxury of knowing that they have a right to contest the correctness of the judge's order in deciding whether to willfully disobey it.... Court orders have to be obeyed until they are reversed or set aside in an orderly fashion."* *Dickinson*, 465 F.2d at 509 (quoting *Southern Ry. v. Lanham*, 408 F.2d 348, 350 (5th Cir.1969) (Brown, C.J., dissenting from denial of rehearing en banc)).

*Id.* at 1400–1401 (footnotes omitted) (emphasis added).

In *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) the Supreme Court of the United States recognized that strict adherence to this principle was necessary even under circumstances that most would agree are intolerable. In *Novak* the Court of Appeals for the Eleventh Circuit summarized *Walker*. Chief Judge Tjoflat wrote:

> In *Walker*, an Alabama trial court, on motion by city officials, enjoined a group of leading civil rights activists, including Dr. Martin Luther King, Jr., from marching through Birmingham during the forthcoming Easter weekend to protest against racial discrimination; the injunction was simply a judicial paraphrase of an existing municipal ordinance. Ignoring the order, the demonstrators marched as planned, without having taken any judicial steps to dissolve or overturn the injunction. As a result of their knowing disregard of the injunction, the court convicted the demonstrators of criminal contempt and sentenced them to five days in jail, plus a $50 fine. Although the Supreme Court recognized that the municipal ordinance on which the injunction was based raised substantial "constitutional issues," *id.* at 316, 87 S.Ct. at 1830, the Court nevertheless upheld the contempt convictions. Said the Court: The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion.... [R]espect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom. *Id.* at 320–21, 87 S.Ct. at 1832 (footnote omitted). Thus, "even in a case where the equities cut so dramatically in favor of the accused contemnors, the Supreme Court came down on the side of the orderly rule of law." *In re Establishment Inspection of Hern Iron Works*, 881 F.2d 722, 726 (9th Cir.1989).

---

5. For purposes of an appeal, the debtors filed a timely motion for reinstatement. That motion tolled the running of their time for appeal of the dismissal of their case. If their reinstatement motion had been denied the debtors could have filed an appeal within 10 days of that time. For purposes of the movant's appeal of the order granting the reinstatement, the movant had, of course 10 days from the entry of the written order to file an appeal. No such appeal was taken. The movant chose to file a motion for

*Id.* at 1401.[6]

### (2) Injunctive Relief

■ The effect of granting a motion to reinstate a bankruptcy case is identical to that of granting a temporary restraining order or preliminary injunction. In all three situations the purpose of the court's order is to prohibit specific actions. The opinion of the Court of Appeals for the Third Circuit in *Bethlehem Mines Corp. v. United Mine Workers of America,* 476 F.2d 860 (3rd Cir. 1973), a case originally decided by the United States District Court for the Western District of Pennsylvania, illustrates the importance of adherence to a court's oral ruling involving such a situation. In *Bethlehem Mines Corp.* the Court of Appeals for the Third Circuit upheld a district court's oral order imposing a preliminary injunction. For the circuit court, Circuit Judge Arlin M. Adams wrote:

> Plaintiff, Bethlehem Mines Corp., brought suit under section 301 of the Labor–Management Relations Act of 1947 against the United Mine Workers of America, District No. 2, and Local 1368. Alleging an illegal strike in violation of the collective bargaining agreement, Bethlehem Mines sought to compel the defendants to return to work and to arbitrate the dispute.

relief from stay rather than appeal the order reinstating the case.

6. The Court of Appeals for the Eleventh Circuit appropriately recognized that there are exceptions to this rule and that those exceptions include:

First, if the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity. *In re Green,* 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962); *Ex parte Fisk,* 113 U.S. 713, 718, 5 S.Ct. 724, 726, 28 L.Ed. 1117 (1885); *Dickinson,* 465 F.2d at 511. "In such a case, the original order is deemed a nullity, and the accused contemnor cannot be fairly punished for violating nothing at all." *In re Hern Iron Works,* 881 F.2d at 726–27. Second, the collateral bar rule presupposes that adequate and effective remedies exist for orderly review of the challenged ruling; in the absence of such an opportunity for review, the accused contemnor may challenge the validity of the disobeyed order on appeal from his criminal contempt conviction and escape punishment if that order

On February 18, 1971, the district court held a hearing on plaintiff's application for a temporary restraining order and, after noting that the involved employees had returned to work, decided to take no action other than to retain jurisdiction. On February 26, 1971, after another work stoppage, the district court held a further hearing and entered a temporary restraining order enjoining the strike and directing arbitration of the dispute. On March 4, 1971, the temporary restraining order was continued until March 9, 1971. After further proceedings, the district court, at a hearing on March 9, 1971, orally continued the temporary restraining order as a preliminary injunction, without objection from the defendants. Defendants neither moved to vacate the temporary restraining order or the preliminary injunction continuing it, nor did they file an appeal.

On May 26, 1971, the district court, on plaintiff's motion, issued a rule to show cause why defendant Local 1368 should not be adjudged in civil contempt because of further work stoppages. Hearing on this motion was continued. On August 19, 1971, however, after another work stoppage, plaintiff filed a second motion for a rule to show cause and a motion for adjudication of civil contempt.

is deemed invalid. *Dickinson,* 465 F.2d at 511. Third, the order must not require an irretrievable surrender of constitutional guarantees. See *Maness,* 419 U.S. at 460, 95 S.Ct. at 592; *Dickinson,* 465 F.2d at 511. In such a case, the only way to preserve a challenge to the validity of the order and repair the error is to violate the order and contest its validity on appeal from the district court's judgment of criminal contempt. Finally, court orders that are transparently invalid or patently frivolous need not be obeyed. *Id.* at 509; *In re Providence Journal Co.,* 820 F.2d 1342, 1347 (1st Cir.1986), modified, 820 F.2d 1354 (1st Cir. 1987) (en banc; per curiam), cert. dismissed for lack of jurisdiction, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). This exception is based, as is the first for jurisdictional defects, on the notion that "the right of the citizen to be free of clearly improper exercises of judicial authority" demands respect. *Id.*

*Id.* at 1401–1402 (footnotes omitted). However, none of these exceptions apply to the instant matter.

On August 23, 1971, the district court held a hearing on the motions filed on August 19. The next day the district court filed a memorandum and findings of fact and conclusions of law, dated August 23, 1971, and a memorandum and order adjudging defendant Local 1368 in civil contempt.

Both in briefs and at oral argument, Local 1368 has mounted its assault on the district court's order holding it in civil contempt, principally upon two grounds: (1) because of the Norris–LaGuardia Act the district court lacked the power to grant injunctive relief and erred in ruling that, under *Boys Markets, Inc. v. Retail Clerks,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), it had such power; (2) the district court did not have jurisdiction because it failed to make required findings of fact and conclusions of law in support of the preliminary injunction.

*Bethlehem Mines Corp. v. United Mine Workers of America,* 476 F.2d 860, 861–862 (3rd Cir.1973).

In response to these facts the Court of Appeals for the Third Circuit recognized the importance of the district court's oral ruling. Judge Adams wrote:

At oral argument and in supplemental briefs, it was suggested that the district court's non-compliance with F.R.Civ.P. 58 may require reversal in this case. That rule states in part: "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth...." Here, the district court entered a temporary restraining order and later continued it orally as a preliminary injunction. Since the temporary restraining order had expired by its own terms when the preliminary injunction was granted, if defendant violated anything, it must have been the preliminary injunction. It was contended at oral argument that the preliminary injunction, never set forth on a separate document, was ineffective and that Local 1368, therefore, violated no valid court order.

Rule 58, however, was intended primarily to clear up the uncertainties of determining when, for the purpose of appellate review, there is a final, appealable judgment. See e.g. *United States v. Chambers,* 429 F.2d 410 (3d Cir.1970); *Levin v. Wear–Ever Aluminum, Inc.,* 427 F.2d 847 (3d Cir.1970); *Pure Oil v. Boyne,* 370 F.2d 121 (5th Cir.1966); cf. *Healy v. Pennsylvania R. Co.,* 181 F.2d 934 (3d Cir.1950); *In re D'Arcy,* 142 F.2d 313 (3d Cir.1944). In addition, the purpose of Rule 58 is to insure that parties know what is required of them, that the public has notice of the entry of judgments, and that an appellate court has sufficient information upon which to base its review.

Under the facts of this case, none of these purposes of Rule 58 would be thwarted. There is no question involved of the time for filing an appeal or of any other matter dealing with an appeal. Defendant never attempted to appeal the granting of preliminary relief, nor has it alleged that it was in any way prevented from doing so. Moreover, the mere fact that the preliminary injunction was not in writing and set forth in a separate document has not been claimed, and, in the context of the present dispute, would not appear to prejudice anyone.

The parties were present in court, either personally or by counsel, during the hearings on the temporary restraining order, when the preliminary injunction was granted, and also in subsequent conferences with the judge. Because the oral preliminary injunction simply continued the earlier temporary restraining order which was set forth in a separate document, the record makes clear that the parties were fully aware of the existence and content of the injunction. No objection was made by the defendant to the granting of injunctive relief, nor was any appeal ever filed. Under these circumstances, we would be exalting form over substance if we were to hold that in failing to enter the preliminary injunction on a separate document, the district court thereby rendered itself powerless to adjudge violations in civil contempt. Accordingly, on the basis of the facts in this case, the failure to set forth the preliminary injunction order in a separate

document did not preclude an adjudication of civil contempt.

It should be stressed that Local 1368 pursued here a course of conduct in the clear belief, as the court below found, that such action would violate a valid court order. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review.

The concept of "a government of laws and not of men," describes a critical quality of our political society. So strongly did the framers of the Constitution determine to secure a reign of law that they conferred unusual safeguards on the judicial office. No one, no matter what his position, nor how virtuous his impulse, was to be a judge in his own case.

No type of dispute is more meet for judicial resolution than one calling into question the power of a court to decide. Jurisdictional controversies are hardly appropriate for final determination by the self-interest of a party.

Plaintiff here sought the aid of a court in circumstances attended with some doubt. Only when a court so obviously journeys outside its prescribed range as to be usurping judicial form may an order issued by it be disregarded. Whether a party may be called to the bar of justice is not for that party, himself, to decide.

If a court had been clearly deprived of the power to act in a case, it, of course, could not overcome such lack of power by a baseless or superficial inquiry into the question. Such would be a mere pretext. But that clearly was not the case here. And, in such circumstances, the direction of the court must be sustained, else we would risk rejecting the requirements of the judicial process.

By deliberately disobeying the district court, the defendant attempted to take upon itself the power to determine what is law and, in doing so, subjected itself to civil contempt.

*Id.* at 863–864 (footnote omitted).[7]

### (3) Conclusion

"The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested right." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803).[8]

▮▮▮ Based on the above the Court finds that its oral order granting the debtors' motion to reinstate their case was effective when made.[9] This Court also finds that section 362 of the Bankruptcy Code imposed an automatic stay on the actions of the movant at the same moment the oral order was issued.[10] Consequently, the movant's fore-

---

**7.** See *United States v. United Mine Workers of America,* 330 U.S. 258, 307, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (Frankfurter, J. concurring). But for the movant's failure to attend the scheduled hearing on the matter of the reinstatement of this case, the matter described above is in principle identical to the instant matter. And although the movant did not hear the Court's oral ruling as did the offending party in *Bethlehem Mines Corp.,* the movant had notice of the hearing but *chose not to attend or to contact the* Court to discover the result of the hearing. Surely a party may not choose to avoid a hearing where a ruling on the record is made and then argue that the ruling is not binding because the litigant was not present when the ruling was made?

**8.** The original quote of "government of laws, and not of men" is attributed to John Adams, second president of the United States, in the "Novanglus" (a pseudonym of John Adams) papers, Boston Gazette, 1774, no. 7 and incorporated in

1780 into Article 30 of the Declaration of Rights of the Massachusetts Constitution. John Bartlett, Bartlett's Familiar Quotations at 380–81 (15th ed. 1980).

**9.** This Court respectfully disagrees with those courts that believe that the law is well settled that a court's oral ruling is "not operative on utterance." *In re Tim Wargo & Sons, Inc.,* 107 B.R. 622, 625 (Bankr.E.D.Ark.1989) (citing *In re Rebeor,* 89 B.R. 314, 320 (Bankr.N.D.N.Y.1988)).

**10.** "Upon the filing of a bankruptcy petition, § 362 of the Code imposes an automatic stay on actions by creditors to collect their claims from a debtor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),* 793 F.2d 1380, 1387 (5th Cir.1986), on reh'g, 808 F.2d 363 (5th Cir. 1987) (en banc court reinstates panel opinion), *aff'd,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). That stay must be equally imposed when a bankruptcy case is reinstated.

closure on the debtors' home was in violation of the oral order and the automatic stay.[11] Those actions are void and the foreclosure is due to be set aside.[12]

## B. Oral and Written Orders

The movant argues that reinstatement of the debtors' case occurred at the time of the entrance of the Court's written order and thus occurred after the foreclosure. The movant extends this argument to conclude that the automatic stay imposed at the time the written order was entered did not have the retroactive affect of nullifying the foreclosure. The movant does not however recognize what this Court believes is the significant difference between the instant case and those supporting the movant, and that is, that this case involves an order that forbids certain actions rather than one that allows those actions. The former is meaningless if of no effect until written.

 Preparing written orders is of course a necessary part of any judicial determination; but recognizing that oral orders must be enforced at the time they are issued rather than waiting for a written order to be entered is important. The Federal Rules of Bankruptcy Procedure contain requirements that orders should be entered and should be written.[13] The Court of Appeals for the Fifth Circuit in *American Precision Vibrator*

Co. v. National Air Vibrator Co. (In re American Precision Vibrator Co., 863 F.2d 428 (5th Cir.1989) explains that the reasons for those requirements are that, "Orders do not become final until they are docketed. The reasons for respecting finality of judgments do not apply to undocketed orders. They cannot be enforced. They cannot be appealed. Hence, judges may change their decisions until they are docketed." *Id.* at 429 (footnotes omitted).[14] In *Beatty v. Traub (In re Beatty)*, 162 B.R. 853 (9th Cir. BAP 1994) the Bankruptcy Appellate Panel for the Ninth Circuit concluded:

> We determine that the conversion is not effective upon the oral ruling. Various rules of procedure recognize that the effective and operative date of an order is the date of entry into the docket. For example, Fed.R.Bankr.P. 9021 and Fed.R.Civ.P. 58 provide that a judgment (which is defined by Fed.R.Bankr.P. 9001(7) and 9002(5) to mean any appealable order) is effective upon entry on the docket. The time for filing a notice of appeal under Fed.R.Bankr.P. 8002(a) or a motion for a new trial under Fed.R.Bankr.P. 9023 and Fed.R.Civ.P. 59 commences upon the entry of an order. Under Fed.R.Civ.P. 62(a), as made applicable by Fed.R.Bankr.P. 7062 and 9014, the entry of a judgment or order triggers the right to execute upon or en-

---

11. May a debtor rely on the court's oral ruling? If a debtor cannot, how can the debtor protect whatever rights are available. There is no procedural mechanism, such as obtaining a stay on appeal, that the debtor may undertake in order to insure the enforceability of a court's oral ruling. Such matters are assumed to be under a court's control.

12. Because the actions are void there is no necessity for the debtors to make any affirmative motion to set aside the foreclosure.

13. Federal Rule of Bankruptcy Procedure 9021 provides:

> Except as otherwise provided herein, Rule 58 F.R.Civ.P. applies in cases under the Code. Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document. A judgment is effective when entered as provided in Rule 5003. The reference in Rule 58 F.R.Civ.P. to Rule 79(a) F.R.Civ.P. shall be read as a reference to Rule 5003 of these rules.

Fed.R.Bankr.P. 9021. This Court does not make a determination of whether a motion to reinstate a dismissed bankruptcy case is an adversary or contested matter.

Federal Rule of Bankruptcy Procedure 5003(a) provides:

> The clerk shall keep a docket in each case under the Code and shall enter thereon each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the United States Courts. The entry of a judgment or order in a docket shall show the date the entry is made.

Fed.R.Bankr.P. 5003(a).

14. An oral order must of course be committed to paper, signed and docketed at some time to allow a party the right of appeal. For that purpose the oral order involved in this controversy was so treated on December 21, 1995. Whatever rights the movant had to ask this Court to reconsider, alter, amend or modify its order were preserved until 10 days after that date. The movant did not choose, however, to appeal that order during the time provided.

force that judgment or order. Given that the rules consistently rely upon the entry of the judgment or order as the effective date for the consequences of the judgment or order, we decline to decide that conversion is effective upon oral ruling for purposes of determining whether a debtor retains his or her right to dismiss a Chapter 13 case.

*Id.* at 857–58.

■■■ But those requirements are not relevant in all situations, or at least are not relevant *at the same time* in all situations.[15] An explanation in *Noli v. Commissioner of Internal Revenue,* 860 F.2d 1521 (9th Cir. 1988) demonstrates the difference in matters such as the one before this Court and those described above. For the court, Circuit Judge Stephen S. Trott wrote:

> First, they argue that the bankruptcy court's oral order granting relief from the automatic stay was neither properly rendered nor docketed by the bankruptcy court. Thus, they contend no valid judgment existed which would allow the ... Court to continue the trial proceedings.
>
> This argument misperceives both the purpose of Fed.R.Civ.P. 58, and the binding effect of an order notwithstanding the issuing court's failure to enter it on the docket. The "separate document" requirement of Rule 58 was intended primarily to clear up uncertainties in determining, for purposes of appellate review, when there is a final appealable judgment. See *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (The "sole purpose" of the separate document requirement is "to clarify when the time for appeal ... begins to run"). Similarly, the bankruptcy court's order lifting the stay was effective and binding upon the parties.

*Id.* at 1525.

The movant argues that unless a debtor takes some affirmative action to prevent a creditor from proceeding against the debtor, that on the issuance of an order dismissing a case the creditor may proceed against the debtor. The cases cited by the movant support this argument. Those cases hold that upon dismissal of a bankruptcy case a creditor may pursue state court remedies. *Bluford v. First Fidelity Mtg. Co. (In re Bluford),* 40 B.R. 640 (Bankr.W.D.Mo.1984) (the debtor's case was dismissed but was reinstated upon the fulfillment of certain conditions within seven days of the reinstatement order; the debtor failed to meet the conditions within the seven days and the creditor foreclosed on property); *Weston v. Cibula (In re Weston),* 101 B.R. 202 (Bankr.E.D.Cal.1989), aff'd, 123 B.R. 466 (9th Cir. BAP 1991), aff'd, 967 F.2d 596 (9th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 973, 122 L.Ed.2d 128 (1993) (an order was entered by the court and notice of the case dismissal was mailed to the debtor; the debtor did not move for a stay pending appeal; the creditor took action against the debtor before the court considered a motion for reconsideration of the dismissal).

The results in those cases are similar to cases where a court lifts the automatic stay and then requires a debtor to seek injunctive relief, in order to have the stay reimposed. *Stacy Fuel Sales, Inc. v. Ira Phillips, Inc. (In re Stacy),* 167 B.R. 243 (N.D.Ala.1994); *Home Life Ins. Co. v. Abrams Square II, Ltd.,* 95 B.R. 51 (N.D.Tex.1988); *Masterson v. Berkeley Fed. Bank & Trust (In re Masterson),* 189 B.R. 250 (Bankr.D.R.I.1995). Where the appropriate injunctive relief was not sought, the above courts held that the automatic stay was not reimposed.

■■■ The issue in the instant matter is not, however, whether the automatic stay is dissolved on the dismissal of a bankruptcy case or what actions a debtor must take in response to the lifting of the automatic stay. The issue is whether an oral order reinstating a bankruptcy case resurrects the automatic stay provision of the Bankruptcy Code. This Court believes that it must. If it does not, the bankruptcy process as designed would cease to function. What is relevant is

---

**15.** See note 13. There comes a time of course when all orders must be written and docketed but that time may vary from order to order depending on the circumstances of a particular case. What is of importance however is that courts recognize that it is the substance of an order, not its form, that dictates its enforceability.

the significant difference in the impact of an order prohibiting certain actions and one allowing certain actions. The difference is actually one of timing. Certain orders must be enforced when issued. The importance of such orders lies strictly in the order's ability to produce immediate results. To delay the operative time of such orders eviscerates them. In this case the debtors made a proper motion to have this Court reinstate their case. The Court ruled on that motion. The intent of that ruling was to give immediate relief to the debtors. If that order is to be effective it must be enforceable when issued. Whether it is "final" for purposes of procedure, is another question.

### C. Equitable Relief

■ "Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). State foreclosure law determines when a mortgagor's interest is terminated.[16] Consequently, this Court may set aside the movant's foreclosure if Alabama law so provides, which it does. In *Chrysler First Fin. Serv. Corp. v. Bolling,* 608 So.2d 734, 737 (Ala.1992) the Supreme Court of Alabama recognized the power of a court of equity to set aside a foreclosure sale.[17]

■ Notwithstanding this Court's finding that the movant's actions in foreclosing the mortgage were void and that the stay provision of 11 U.S.C. § 362 was in effect when those actions were taken, this Court finds that the movant's foreclosure should, for equitable reasons, be set aside. A party may not gain an advantage in litigation simply because that party is the beneficiary of the results of a court's predicament. The undersigned, along with three other bankruptcy judges in this Court, is a visiting judge in the Western Division of this Court, the division where the instant case is pending. These visits are necessary to manage the significant number of chapter 13 cases in which the former chapter 13 trustee for this division, and now the sitting judge in the division, has conflicts. At all times the deputy clerks in the division are, while administering cases for the resident judge, working with four visiting judges on a case load of approximately 4800 conflict chapter 13 cases.

The instant matter was scheduled for and was heard on October 25, 1995. Although given the specific opportunity to attend the hearing on the debtors' request to reinstate their case, the movant did not. The Court's oral ruling was a matter of record. A computer record of that ruling was made immediately after the ruling and a paper copy of that entry was placed in the Court's official file. Had the movant made a simple inquiry, the result of the oral ruling would have been conveyed. The movant may not now ignore the duly noticed operations of this Court and then contend that it is entitled to some particular relief because the Court did not document the results of the operations the movant chose to ignore. This is patently unfair.[18] Other than its costs of foreclosure and maintaining the instant matter, the movant has not been harmed. If the movant is truly entitled to relief from the automatic, that relief could be granted in a subsequent proceeding. To allow the drastic relief of foreclosure of a residence simply because of a technical shortcoming of the Court would be inequitable.

### V. Conclusion

For the reasons stated above the Court finds that the *Motion for Relief from Stay* filed by William J. Wade, as trustee of Mid–State Trust III is due to be denied. The Court's oral ruling reinstating the debtors' case was effective when made. The automatic stay provisions of 11 U.S.C. § 362 became

---

**16.** *In re Sims,* 185 B.R. 853, 858 (Bankr.N.D.Ala. 1995); *In re McKinney,* 174 B.R. 330, 333 (Bankr.S.D.Ala.1994).

**17.** *See In re Parks,* 193 B.R. 361, 365 (Bankr. N.D.Ala.1995) where this Court set aside a foreclosure where a mortgagee recognized an ongoing mortgage relationship by accepting monthly mortgage payments after the foreclosure.

**18.** After the Court's written order was entered on the docket, the movant could have, but chose not to, appeal that order. If the movant had filed an appeal and the reinstatement was disallowed, the foreclosure would stand. However, the movant instead chose to file the pending motion for relief from stay. The 10–day time (calculated from the time the written order was entered) for filing an appeal has, of course, now passed.

effective against the movant at the time the Court made its oral ruling, but even if they did not, the Court finds that for equitable reasons the foreclosure conducted by the movant is due to be set aside. Because little evidence was presented that related to the merits of the motion for relief, the Court has not considered the motion for relief as a motion requesting post-reinstatement relief except to the extent that the movant seeks ex post facto confirmation of its foreclosure. If the movant desires to institute future fore-closure proceedings against the debtor, the movant should file a new motion.

It is therefore **ORDERED, ADJUDGED AND DECREED** that:

1. The *Motion for Relief from Stay* filed on February 16, 1996 by William J. Wade, as trustee of Mid–State Trust III is **DENIED;** and

2. The Movant's November 21, 1995 fore-closure of the debtors' home is hereby **SET ASIDE.**