**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 9 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

HAROLD ALVIN SCHILDT,

     Plaintiff-Appellant,

v.

FEDERAL BUREAU OF
INVESTIGATION; UTAH STATE
DEPARTMENT OF SOCIAL
SERVICES; MONTANA STATE
SOCIAL SERVICES, GLACIER
COUNTY; FRANCIS ONSTAD,
Blackfeet ICWA Director; ROBERT
M. CARLSON; HARRY SOUVALL,
8th District Prosecutor; JOHN
LAURSEN, Uintah County Sheriff
Deputy; UINTAH COUNTY
SHERIFF'S DEPARTMENT,

     Defendants-Appellees.

Nos. 96-4114, 96-4149
(D.C. No. 93-CV-1082)
(D. Utah)

---

ORDER AND JUDGMENT[*]

---

Before BRORBY, BARRETT, and LUCERO, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Harold Alvin Schildt appeals the order of the district court granting summary judgment to all defendants on plaintiff's claims brought pursuant to 42 U.S.C. § 1983. Because we agree with the district court that all defendants in this action were entitled to immunity or were otherwise appropriately dismissed, we affirm.[1]

Plaintiff and his former wife were engaged in a custody dispute involving their daughter, Sammi. On November 3, 1992, a Utah state court awarded temporary physical custody of Sammi to plaintiff. When, by December 3, 1992, the child's mother had not relinquished custody, the mother was arrested. At a hearing following the mother's arrest, the court modified the November 3 custody order to prohibit plaintiff from removing Sammi from the state of Utah and to provide for visitation for the mother. Plaintiff's attorney was present at this hearing.

A few days later, plaintiff himself appeared before the court and was orally informed by the judge of the modification of the custody order preventing him from removing Sammi from Utah. Neither this order nor the November 3 order

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

had been reduced to written form when, shortly before Christmas, plaintiff took his daughter to visit his family in Browning, Montana.

Upon learning that plaintiff had taken his daughter out of the State of Utah, Harry Souvall, the county prosecutor for Uintah County, Utah, instructed the county sheriff, John Laursen, to draft an affidavit of probable cause for custodial interference. Sheriff Laursen did so after conducting an investigation of the matter. Mr. Souvall then obtained a warrant for plaintiff's arrest and contacted the FBI for help in arresting plaintiff, who by then was on the Blackfeet Indian Reservation in Montana. An FBI agent, Robert Carlson, secured a warrant for plaintiff's arrest under 18 U.S.C. § 1073.[2] Plaintiff was arrested and returned to Browning, Montana, where a federal magistrate judge determined that plaintiff was not a fugitive from justice. The federal charges against plaintiff were dismissed, but he spent thirty-seven days in jail in Montana awaiting his return to Utah. Once in Utah, the charges pending there against plaintiff were also dismissed because of a defect in the information.

---

[2]    18 U.S.C. § 1073 provides, in pertinent part:

> Whoever moves or travels in interstate or foreign commerce with intent . . . to avoid prosecution . . . under the laws of the place from which he flees, for a crime . . . which is a felony under the laws of the place from which the fugitive flees . . . shall be fined under this title or imprisoned not more than five years, or both.

-3-

Plaintiff brought this action under § 1983 alleging that his civil rights had been violated by various defendants including county attorney Souvall, Sheriff Laursen, the Sheriff's Department of Uintah County, the FBI, and FBI agent Carlson. The district court determined that Mr. Souvall was absolutely immune from prosecution because he had been acting within the scope of his prosecutorial duties. Sheriff Laursen was later granted qualified immunity, and the Sheriff's Department was dismissed. With regard to the latter, the court held that no factual allegations had been made against the Sheriff's Department per se, and that no respondeat superior liability would lie against the department. Finally, agent Carlson was granted qualified immunity, and the FBI was also dismissed.

On appeal, plaintiff argues that the district court prematurely dismissed his claims, thereby precluding his ability to establish defendants' liability under § 1983.[3] We disagree.

At the heart of plaintiff's lawsuit is his theory that an oral order from a court of competent jurisdiction is somehow legally ineffective until it is reduced to writing, thus making defendants' efforts at enforcing the order against him wrongful. Under the circumstances presented here, this is incorrect. As the Supreme Court has noted,

---

[3]     Plaintiff filed a premature appeal in this matter, case No. 96-4114. That appeal has been consolidated with case No. 96-4149.

-4-

[t]he orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This principle is especially applicable to orders issued during trial.

Maness v. Meyers, 419 U.S. 449, 459 (1975) (quotation and citation omitted). Because plaintiff's attorney was present when the court initially modified the custody order to prohibit the removal of Sammi from Utah, and because plaintiff himself was present when the court later reiterated this restriction, he cannot now argue that he was free to disobey the order until it had been reduced to writing. As the Supreme Court has instructed:

If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

Id., at 458.

The fact that the court's order in this case was oral does not diminish its force. We recognize that the eventual entry on a docket of a written order is important for many procedural reasons, not the least of which is to determine when, for purposes of appellate review, there is a final appealable judgment. See Fed. R. Civ. P. 58; Fed. R. App. P. 4. Plaintiff, however, did not appeal the court's order or attempt any other judicial remedy that may have depended on the existence of a written order.

-5-

We view the court's order as akin to the grant of a temporary restraining order or a preliminary injunction, the purpose of which is to prohibit specific actions. See Bethlehem Mines Corp. v. United Mine Workers, 476 F.2d 860, 862-64 (3d Cir. 1973) (affirming a finding of contempt against a party which had disobeyed an orally entered temporary restraining order); see also In re LaMarre, 494 F.2d 753, 758 (6th Cir. 1974) (noting that an order "entered in open court in the presence of the person concerned or with his knowledge clearly proved" can be enforced by criminal contempt proceedings). While there may be instances in which an oral order should not be enforceable until reduced to writing, this case is not one of them. "[T]his case involves an order that forbids certain actions rather than one that allows those actions. The former is meaningless if of no effect until written." In re Nail, 195 B.R. 922, 930 (Bankr. N.D. Ala. 1996). Plaintiff's argument that defendants all acted illegally because they proceeded without the auspices of an enforceable order, therefore, is without merit.

As noted above, the district court determined that county attorney Souvall was entitled to absolute immunity because his involvement in this case was in his role as a prosecutor exercising his prosecutorial duties. "Absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." Roberts v. Kling, 104 F.3d 316, 318 (10th Cir. 1997), petition for cert. filed, (U.S. April 1, 1997) (No. 96-1602) (quotation and citation

omitted).  Plaintiff's complaint charged that Mr. Souvall "had Uintah County Deputy Sheriff, John Laursen draft an Affidavit of Probable Cause," Appellant's App. at 18, and that he eventually charged plaintiff with the third degree felony of custodial interference.  Plaintiff also alleged that Mr. Souvall violated his constitutional rights by contacting the FBI for help in apprehending him.

This court has recently examined the issue of absolute immunity in a prosecutorial setting where the defendant was an investigator in a district attorney's office.  See Roberts, 104 F.3d at 318.  There, we concluded that the defendant's actions in swearing out a complaint and obtaining an arrest warrant were prosecutorial in nature, as part of the initiation of a judicial proceeding, and thus deserving of absolute immunity.  See id. at 319-20.  Defendant Souvall's actions in this case in directing the Uintah County Sheriff's Department to investigate rumors relative to plaintiff's whereabouts was simply an attempt to establish the probable cause necessary before a criminal complaint could be filed.  Once the facts reported to defendant Souvall were verified by the Sheriff's Department, it was incumbent upon him to charge plaintiff and to take steps to secure his appearance.  Defendant's acts of verifying probable cause and ultimately filing a complaint were clearly a part of the initiation of prosecution, see Imbler v. Pachtman, 424 U.S. 409, 431 (1976), and thus deserving of absolute immunity, see Roberts, 104 F.3d at 319-20.

As mentioned above, the district court granted qualified immunity to Sheriff Laursen.

> We review *de novo* the district court's grant of qualified immunity on summary judgment, viewing the evidence in the light most favorable to the nonmoving party. We analyze assertions of qualified immunity under a two-part framework: first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his or] her conduct violated the right. The plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity. Once the plaintiffs have met this initial burden, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. If we determine that plaintiffs have failed to show the officers' conduct constituted a violation of a constitutional or statutory right, we need not address the other elements of the qualified immunity inquiry.

Davis v. Gracey, No. 95-6245, 1997 WL 192018, slip op at *3 (10th Cir. Apr. 21, 1997) (quotations and citations omitted). As long as a defendant pleads it as an affirmative defense, qualified immunity acts as a shield for defendant from the burdens of discovery and trial as well as for liability. See Mitchell v. Maynard, 80 F.3d 1433, 1447 (10th Cir. 1996).

Plaintiff's complaint alleged only that Sheriff Laursen's probable cause affidavit "was fatally defective because it did not articulate facts that alleged the elements of Custodial Interference." Appellant's App. at 20. Nothing in the complaint implicates the Uintah County Sheriff's Department. Under these

-8-

circumstances, we agree with the district court that plaintiff has not stated a claim that can overcome Sheriff Laursen's qualified immunity and has not stated a claim at all against the Sheriff's Department.

Plaintiff did not contest the veracity of Sheriff Laursen's affidavit. See id. at 44. In order to establish that Sheriff Laursen violated his due process rights, plaintiff would have to prove that the affidavit filed by the Sheriff was untruthful. See St. John v. Justmann, 771 F.2d 445, 448 (10th Cir. 1985). Because plaintiff concedes that the facts in the affidavit were true, he cannot show that Sheriff Laursen's conduct constituted a violation of a constitutional right. Sheriff Laursen is thus entitled to qualified immunity. See Davis, 1997 WL 192018, at *3. Because we agree with the district court that Sheriff Laursen committed no constitutional violation, and because plaintiff alleged no specific claims implicating the Uintah County Sheriff's Department, the claim against the department was also properly dismissed. See Taylor v. Meacham, 82 F.3d 1556, 1564 (10th Cir.), cert. denied, 117 S. Ct. 186 (1996).[4]

Finally, we also affirm the dismissal of the FBI and its agent, Robert Carlson. When county attorney Souvall wrote to the FBI requesting help in

---

[4] On appeal, plaintiff discards his argument based on the allegedly defective probable cause affidavit and, instead, argues that Sheriff Laursen violated plaintiff's constitutional rights by allowing Mr. Souvall, the county attorney, to act as the complainant. Even if we could determine that this argument had been raised in the district court, we would reject it as meritless.

apprehending plaintiff, he included in his correspondence a copy of the information, the warrant of arrest, the affidavit of probable cause, and a petition filed in juvenile court for custody of plaintiff's daughter to social services. See Appellant's App. at 33. The arrest warrant charged plaintiff with custodial interference, a third degree felony; plaintiff does not argue that the warrant appeared facially invalid.

As the district court noted, "[g]overnment officials, including FBI agents, are protected by the defense of qualified immunity for civil liability for objectively reasonable official actions." Id. at 46 (citing Anderson v. Creighton, 483 U.S. 635, 636 (1987)). Plaintiff has pointed to no authority establishing his right to have the FBI re-investigate and verify the facts underlying state process before proceeding under 18 U.S.C. § 1073. Even if plaintiff has identified a more general constitutional right to be free from false arrest, however, Agent Carlson would not lose his qualified immunity unless it was clear that, on an objective basis,

> no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.
>
> . . . .
>
> Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost.

-10-

<u>Malley v. Briggs</u>, 475 U.S. 335, 341, 344-45 (1986). We agree with the district court that Agent Carlson was entitled to rely on the documentation he received from the Utah county attorney for purposes of 18 U.S.C. § 1073. Because Agent Carlson committed no constitutional violation, and because plaintiff made no specific charges in his complaint against the FBI, the latter was also appropriately dismissed as a defendant.

AFFIRMED.

Entered for the Court


Carlos F. Lucero
Circuit Judge