## In re ROYAL PALM SQUARE ASSOCIATES, a Florida joint venture, Debtor.

**Bankruptcy No. 90–0144–9P1.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Feb. 19, 1991.

Cindy L. LoCicero, Tampa, Fla., for Royal Palm Square Associates, debtor.

James D. Silver, Miami, Fla., for AETNA Life Ins. Co.

Mark J. Wolfson, Tampa, Fla., for BancFlorida.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY AND CONTINUING CONFIRMATION HEARING

ALEXANDER L. PASKAY, Chief Judge.

THIS is a yet-to-be confirmed Chapter 11 case. Royal Palm Square Associates (Debtor) so far has not been able to meet the requirements of § 1129 of the Bankruptcy Code because of its inability to obtain the necessary affirmative votes or, in the alternative, utilize § 1129(b), the cramdown provision of the Bankruptcy Code. The immediate matter under consideration is a Motion for Relief from Automatic Stay filed by Aetna Life Insurance Company (Aetna), who seeks relief from the automatic stay based on § 362(d)(1) and § 362(d)(2) of the Bankruptcy Code. Aetna seeks relief in order to conclude its still-pending foreclosure action which, of course, was halted upon the filing of the Petition for Relief by the Debtor under Chapter 11 on January 8, 1990. Certain important facts relevant to the Motion are without dispute and are already part of the record of this case and can be summarized as follows:

This is a single asset case and the Debtor's only asset is the Royal Palm Square Shopping Plaza (Plaza) located at Fort Myers, Florida. The Plaza is encumbered by a first mortgage held by Aetna on which the current outstanding principal balance is $6,663,850.00. Accrued but unpaid prepetition interest calculated at the nondefault contract rate of 12.5% totals $1,018,089.60.[1] Prepetition late charges are $4,164.91. Thus, the total prepetition obligation of the Debtor to Aetna, calculated at the 12.5%

---

1. It should be noted that Aetna contends that it is entitled to interest at the default contract rate of 18.5%. This Court will not address the interest rate to which Aetna is entitled at this time.

interest rate, is $7,686,104.51. The indebtedness increases at the rate of $2,313.84 per diem, again based on the 12.5% interest rate, which the Debtor is currently paying pursuant to this Court's Order authorizing the Debtor to use Aetna's cash collateral. As an oversecured creditor, Aetna is entitled to reasonable attorney's fees and costs which Aetna asserts totalled approximately $195,122.00 as of November 30, 1990. The second mortgage on the property is held by BancFlorida on which there is an approximate outstanding principal balance of $1,314.261.00, plus interest of $206,338.97 through December 21, 1990, and late charges of $10,633.00. It is also without dispute that the real estate taxes on the property have not been paid for the tax years 1987, 1988 and 1989, and amount to almost $800,000.00. While the Debtor is paying adequate protection to Aetna in order to use the cash collateral, i.e., the rent collected from the tenants of the Plaza, it does not escrow any funds for taxes. Although in the retail portion of the Plaza the occupancy rate is about 98%, the office space portion of the Plaza is less than 50%. This Court already determined that the value of the Plaza is $9 million. In addition, the Debtor has $100,000.00 in the Debtor's operating account and $175,000.00 in the escrow account. Thus, vis-a-vis Aetna, the Debtor has some equity in the property at this time, which equity technically might be available to pay the holders of tax certificates and some to BancFlorida on its second mortgage, but certainly nothing to general unsecured creditors if the property is sold at the established value, and certainly not if the property is sold for less than the established value.

Although the Debtor contends it has a contract to sell the property, so far no contract to sell the Plaza was presented for the Court's consideration. Obviously, this Court is not in a position to evaluate the viability and validity of the contract. As noted earlier, the Debtor has not been able to obtain any affirmative votes in the requisite number and amount in any of the four impaired classes. The Debtor seeks additional time in order to obtain the necessary votes or, in the alternative, to utilize the cramdown provision of § 1129(b) limited to the claim of Aetna. For obvious reasons, BancFlorida supports the Debtor's request since it is clear that if Aetna is permitted to complete its foreclosure action and the Plaza is sold at the foreclosure sale, the interest of BancFlorida would without doubt be wiped out.

It is agreed by the Debtor that in order to meet the interest obligation on the first mortgage only, at the contract rate, but not at the default rate, the property must generate at least $69,410.00 per month in addition to monies necessary to meet ordinary operating expenses of the mall including maintenance and the monies necessary to be escrowed for real estate taxes. The total rental revenue generated by the Plaza in the month of December was $112,038.99, and in the same month the property manager spent $123,387.62, including the Aetna payments of $69,415.10 computed at the nondefault contract rate. In the month of November, the total revenues generated were $107,353.32 and the expenses were $109,259.18. All the operating reports filed indicate that the property did generate enough monies to pay operating expenses and debt service at the contract rate and paying only the contract nondefault rate of interest but nothing on the principal or on the second mortgage held by BancFlorida who, being undersecured, has not received any adequate protection payments.

As noted, the relief sought under § 362(d)(1) is based on the proposition urged by Aetna, that its secured position is constantly eroding, and has, in fact, significantly eroded since the filing of this Chapter 11 case in spite of the fact that it receives adequate protection payments. This is so because the Debtor does not escrow funds to pay real estate taxes and there are outstanding tax certificates on which the holder earns interest at a high rate authorized by law. It is without doubt that this certainly has a serious negative impact on Aetna's interest, being superior to the interest of Aetna in the Plaza.

In addition, Aetna also contends that its Motion should be granted for "cause", *citing In re Natural Land Corp.*, 825 F.2d

296 (11th Cir.1987), *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 at n. 7 (11th Cir. 1984), and *In re Rad Properties, Inc.*, 84 B.R. 827 (Bankr.M.D.Fla.1988). In support of this proposition, Aetna points out this is a single asset case; it is only a three-way dispute between the Debtor and its two mortgagees; and the Debtor itself has no employees. The total unsecured debt scheduled by the Debtor is $19 million, one half of which is owed to insiders and the other to professionals. Based on these facts, it is the contention of Aetna that it is entitled to the relief it seeks and the automatic stay should be removed for "cause" in order to permit Aetna to complete its pending foreclosure action.

Aetna also seeks relief pursuant to § 362(d)(2), which mandates the removal of the automatic stay upon showing there is no equity in the subject property and the same is not needed for effective reorganization. Section 362(g) provides that the burden to establish lack of equity is on the moving party, but on all other issues, the burden is placed on the debtor.

■ It cannot be gainsaid, at least at this time, that the Debtor has some equity in the subject property vis-a-vis Aetna, but certainly has no equity when one considers both the amount due to Aetna *and* the amount owed to unpaid real estate taxes for the years 1987, 1988, and 1989 and to BancFlorida. While it is true that in the context of a Motion filed under Section 362(d)(1) one does not consider the total indebtedness encumbering the subject property, especially when the moving party holds the first mortgage, this is not the case when the relief sought is based on Section 362(d)(2), and under that section, it is appropriate to consider the amount due on all mortgages and other valid encumbrances on the subject property in order to determine whether or not the Debtor has or does not have equity in the property in question. *Stewart v. Gurley*, 745 F.2d 1194 (9th Cir.1984); *Matter of South County Realty, Inc., II*, 69 B.R. 611 (Bankr.M.D.Fla.1987) (combined indebtedness is proper method to determine lack of equity in connection with a motion seeking relief from the automatic stay under § 362(d)(2)).

■ The Court, having concluded that the value of the property is $9 million, and the outstanding balance on the mortgage of Aetna is about $8.6 million, the mortgage of BancFlorida is $1.6 million, and the Plaza is also encumbered by tax liens for unpaid taxes for 1987, 1988 and 1989 in the approximate amount of $800,000.00, it is clear that there is no equity in the subject property even if the Court accepts the Debtor's version as to the proper amount of the secured claim of Aetna which is currently under challenge.

■ The second requirement to obtain relief under Section 362(d)(2) is evidence to indicate that the property in question is not needed for an "effective" reorganization. This requirement, on which the burden of proof is on the Debtor, has generally been accepted to mean that either the property has sufficient equity which could be refinanced and the plan could be funded from a new loan, that the property will be sold and the sale will produce sufficient monies to fund the plan of reorganization, or the property is unique in character and it is essential to the survival of the reorganized entity. The fact that the property involved is the only asset of the Debtor is really of no consequence. *See In re Albany Partners, Ltd., supra.*

■ Based on the foregoing, it is not difficult to conclude that the prospects of this Debtor to effectuate a reorganization are quite slim, if not nil. However, in light of the fact that Aetna is receiving adequate protection payments and that the property is generating enough funds at this time over all to cover the operating expenses, this Court is of the opinion that the Motion for Relief from Automatic Stay should be set for a final evidentiary hearing on short order, together with the continued hearing of confirmation, in order to give the Debtor one last chance to obtain confirmation, with the proviso, however, that this Court will not enter any further extensions or continuances. Based on the foregoing, it is

ORDERED, ADJUDGED AND DE-CREED that the *Motion for Relief from Automatic Stay* be, and the same is hereby, denied without prejudice, and the automatic stay is extended to consider the Motion anew to be considered together with the hearing on confirmation to be held before the undersigned in Courtroom A of the United States Bankruptcy Court, 4921 Memorial Highway, Tampa, Florida, on March 20, 1991, at 9:00 a.m.

DONE AND ORDERED.