**In re COBBLESTONE ASSOCIATES, a Florida general partnership, Debtor.**

**Bankruptcy No. 92–01885–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 8, 1992.

Frederick R. Brock, Jacksonville, Fla., for debtor.

John B. Macdonald, Jacksonville, Fla., for movant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Motion for Relief from Stay filed by NCNB National Bank of Florida, a national banking association ("NCNB"). An evidentiary hearing on NCNB's Motion for Relief from Stay was held on May 18, 1992, and upon the evidence presented the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

Cobblestone Associates ("Cobblestone"), Debtor, is the owner and operator of a strip shopping center located at 3033 North Monument Road, Jacksonville, Florida, consisting of land, buildings, improvements, and related personal property (the "Property"). The Property is Cobblestone's only asset.

Pursuant to a Loan Agreement with NCNB (the "Loan Agreement"), and on September 28, 1987, Debtor executed and delivered to NCNB a promissory note in the original principal amount of $1,500,000 (the "Note"). As security for payment of the Note and performance of certain other obligations, Debtor executed and delivered to NCNB a mortgage and security agreement also dated September 28, 1987, granting NCNB a first lien against the Property (the "Mortgage"). As additional security for payment of the Note and performance of other obligations, Debtor executed and delivered to NCNB a UCC-1 Financing Statement, and Assignment of Lessor's Interest in Leases, Rents, and Profits, each dated September 28, 1987. The obligations under the Note, Mortgage, and other collateral documents were modified by a Loan Modification Agreement dated July 6, 1989.

Debtor defaulted on the Note and Mortgage by failing to pay all principal and interest due under the Note, as modified by the Loan Modification Agreement, at its maturity on September 15, 1990.

On February 28, 1991, NCNB filed a civil action in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, Case No.: 91–2156–CA, Division "CV–H" (the "Foreclosure Action"). On September 13, 1991, a receiver was appointed in the Foreclosure Action to manage the property, collect all rents from tenants, and collect books and records from the Debtor.

Despite the Receiver's request, the Debtor failed to deliver immediate possession of the Property. Accordingly, NCNB moved in the Foreclosure Action to have the general partners of the Debtor held in contempt. The initial hearing on NCNB's Motion for Contempt was commenced on September 23, 1991, and was continued for further hearing on September 25, 1991.

On September 24, 1991, an involuntary bankruptcy petition was filed in Houston, Texas, by Donald Suman and Mark Michelson, two of the general partners of the Debtor, and by Accolade Development Corporation, a corporation owned by Mark Michelson and Donald Suman. Upon motion of NCNB, and on March 18, 1992, the Texas Bankruptcy Court transferred venue of the case to this Court, concluding that the convenience of the parties was best accommodated in Florida.

As of the date of the hearing on the Motion for Relief from Stay, NCNB was owed the principal amount of $1,250,507.66, and accrued interest at the contract rate of $208,846.17, for a total indebtedness of $1,459,353.83. Additionally, the total amount of unpaid ad valorem real property taxes for the years 1989, 1990, and 1991 was $66,102.86, which taxes constitute a lien against the Property senior to NCNB's interest.

NCNB's expert real estate appraiser testified the Property has a fair market value of $1,000,000.00 as of November 15, 1991, and as of the date of the hearing. Mark Michelson, testifying as the owner of the Property, stated the value of the Property was $1,400,000.00.

Debtor has no employees and employs no management company. With one exception, the unsecured creditors consist solely of insiders or entities controlled by insiders of the Debtor.

## CONCLUSIONS OF LAW

█ NCNB seeks relief from stay under Sections 362(d)(1) and 362(d)(2). Under Section 362(d)(1), a movant is entitled to relief from stay for cause, including the lack of adequate protection as well as upon a finding that the petition was filed in bad faith. Under Section 362(d)(2), relief from stay shall be granted with respect to a stay against property if the debtor does not have equity in such property and the property is not necessary to an effective reorganization.

█ Section 362(g) delineates the relative burdens of proof between the party requesting the relief from stay and the party opposing such relief. The establishment of lack of equity is on the moving party, and the burden is on the party opposing the lifting of the stay, in this case the Debtor, as to all other issues. Additionally, the burden is not only the burden of proof, but also the burden of persuasion. *In the Matter of Certified Mortgage Corp.,* 20 B.R. 787, 788 (Bankr.M.D.Fla.1982).

Addressing first the issues under Section 362(d)(2), the Court must initially determine whether the Debtor has equity in the Property. Charles Lentz, M.A.I. appraised the Property as having a fair market value at the time of the hearing of $1,000,000.00. One of Debtor's general partners, testifying as the owner of the Property, stated that he believed the Property was worth $1,400,000.00. In addition, a NCNB corporate representative testified that the total indebtedness owed on the Note at the time of the hearing was $1,459,353.83, including principal and interest. The evidence also indicated that outstanding ad valorem real property taxes due for 1989, 1990, and 1991, which constitute a senior lien on the Property, totalled $66,012.86. Even if the outstanding ad valorem real property taxes were excluded, and even accepting the Debtor's own opinion of value, the Court must conclude for the purposes of Section 362(d)(2)(A) that the Debtor does not have equity in the Property.

█ The next issue for the Court to determine under Section 362(d)(2) is whether the property is needed to accomplish an effective reorganization. To avoid the lifting of the stay, the debtor must offer evidence that there is a realistic possibility of an effective reorganization. *In the Matter of Discount Wallpaper Center, Inc.,* 19 B.R. 221, 222–23 (Bankr.M.D.Fla.1982); *In re Dublin Properties,* 12 B.R. 77, 80–81 (Bankr.E.D.Penn.1981).

█ Whether the property at issue is necessary for an effective reorganization is not dependent upon whether the property is the only asset of the Debtor or whether the Debtor is deriving income from such property. *In re Royal Palm Square Associates,* 124 B.R. 129, 132 (Bankr.M.D.Fla. 1991); *In the Matter of Certified Mortgage Corp.,* 20 B.R. 787, 788 (Bankr.M.D.Fla. 1982). The requirement of whether property is necessary for an effective reorganization may be satisfied by any of the following measures:

> ... [E]ither the property has sufficient equity which could be refinanced and the plan could be funded from a new loan, that the property will be sold and the sale will produce sufficient monies to fund the plan of reorganization, or the property is unique in character and it is essential to the survival of the reorganized entity. *In re Royal Palm Square Associates,* 124 B.R. 129, 132 (Bankr. M.D.Fla.1991).

No evidence was presented by the Debtor that the Property was necessary for an effective reorganization. The Property is a strip shopping center located in Northeast Jacksonville. There are numerous strip shopping centers within its geographical location and the Property could not be considered "unique in character". The occupancy of the shopping center at the time of the hearing was approximately 70% and had been level at 70% occupancy for approximately a year. Although the Debtor's general partner testified that two new leases had been obtained, no leases were presented to the Court as evidence. The sheer number of strip shopping centers and the soft real estate market at the current time provide little hope for Debtor to be able to sell the Property. Lastly, there is

no equity in the Property which could be refinanced to fund a plan of reorganization.

Debtor must present evidence that an effective reorganization is realistically possible; it is of no consequence whether the property is indispensable to the Debtor's survival. *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984). Debtor presented no evidence of any potential plan of reorganization in order to meet its burden under Section 362(g), and has not filed a plan of reorganization despite the fact that this case was filed September 24, 1991.

■ Turning to Section 362(d)(1), NCNB presented evidence that it has neither received nor been offered adequate protection by the Debtor since the filing of the case. At the hearing, the Debtor did not offer adequate protection and presented no evidence on its ability to provide adequate protection.

NCNB has provided sufficient evidence to establish that the Debtor has no equity in the Property, thus meeting its burden under Section 362(g). Debtor provided no evidence regarding the necessity of the Property to an effective reorganization, or the feasibility of any potential plan, and has failed to meet its burden under Section 362(g). Additionally, the Debtor has neither offered nor presented evidence of its ability to provide adequate protection of NCNB's interest in the Property.

This Court previously ruled that in addition to the lack of adequate protection, a bad faith filing of bankruptcy constitutes cause for lifting the stay under Section 362(d)(1). *In re Rad Properties, Inc.,* 84 B.R. 827, 829–30 (Bankr.M.D.Fla.1988); *In re Sar–Manco, Inc.,* 70 B.R. 132, 139–42 (Bankr.M.D.Fla.1986). Numerous cases have set forth factors which courts may consider in determining whether a bankruptcy case was filed in bad faith. The Fifth Circuit Court of Appeals provided a list of conditions that often exist when a petition was filed in bad faith: (1) the debtor has one asset which is encumbered by the lien of the secured creditor; (2) there are no employees except for the principals; (3) there is little, if any, cash flow and no available sources of income to make adequate protection payments; (4) there are only a few unsecured creditors whose claims are relatively small; (5) the property has been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending the foreclosure; (6) bankruptcy offers the only means of forestalling the loss of the debtor's property; (7) there are sometimes allegations of wrongdoings by the debtor or its principals; and (8) the "new debtor syndrome" exists where a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors. *In the Matter of Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir.1986).

This Court in *In re Rad Properties, Inc.,* 84 B.R. 827, 830 (Bankr.M.D.Fla.1988), condensed the factors provided by the Fifth Circuit into three categories:

(1) Whether the debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized consistent with the congressional intent and protection afforded by Chapter 11;

(2) Whether the debtor has filed a petition or reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and

(3) Whether the debtor has a realistic probability of successful reorganization.

After reviewing the facts in this case in connection with the three categories, this Court concludes that most of the factors which constitute bad faith are present.

First, Debtor is not an operational business enterprise in the community. Debtor employs no persons in the community, not even a management company. Debtor does not have ongoing business operations that may be rehabilitated as Debtor has one asset consisting of a partially leased shopping center encumbered by NCNB's Mortgage. Nearly all of Debtor's unsecured debt is owed to insiders or companies owned by insiders of Debtor. The remain-

ing debt is owed to an architectural firm for a relatively small amount.

This bankruptcy was apparently filed to deter the foreclosure of the Property. The case was filed as an involuntary petition by two of Debtor's general partners who were also creditors of Debtor. The petition was filed over seven months after the Foreclosure Action was initiated and on the eve of a hearing for sanctions against the partners of Debtor. Inasmuch as the Property is Debtor's only asset, the filing of the petition on the eve of judicial action can only be considered an act to forestall the contempt hearing and the continuation of the Foreclosure Action.

Finally, Debtor has no realistic possibility of reorganization. The Property has been at the same percentage of occupancy for at least the last year. Debtor has been unable to obtain any form of new financing. Although Debtor is receiving rents from the tenants, Debtor has failed to pay the 1989, 1990, and 1991 ad valorem real property taxes due in an amount exceeding $66,000.00. No adequate protection payments have either been offered to or received by NCNB since the filing of the petition. Debtor presented no evidence regarding the feasibility of adequate protection payments to NCNB. The indebtedness owing to NCNB has matured according to its terms. In addition, Debtor presented no evidence of any ability to obtain new financing or income sufficient to fund a plan. Therefore, Debtor does not have a realistic probability of a successful reorganization.

NCNB has provided sufficient evidence to establish that the Debtor has no equity in the Property and has met its burden of proof under Section 362(g). Debtor provided no evidence regarding the necessity of the Property to an effective reorganization, or the feasibility of any potential plan, and has failed to meet its burden under Section 362(g). Additionally, the Debtor has neither offered nor presented evidence of its ability to provide adequate protection of NCNB's interest in the Property. Finally, the Court concludes that the Debtor's petition was filed by general partners of the Debtor in bad faith, constituting cause for

lifting of the automatic stay under Section 362(d)(1). This is primarily a two party dispute that should be handled in a non-bankruptcy forum. A separate order granting NCNB's Motion for Relief from Stay will be entered.