**In re Barbara A. BROWN, Debtor.**

No. 02–02273–8W3.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 21, 2003.

Patrick R. Smith, Esq., Barbara C. Rodriguez, Esq., Debt Relief Legal Centers, Tampa, FL, for debtor.

Shirley C. Arcuri, Esq., Tampa, FL, for William R. Hobson.

Neal E. Young, Esq., Winter Haven, FL, for United States of America, Department of Agriculture.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

*MEMORANDUM DECISION AND ORDER DENYING: (1) EMERGENCY MOTION FOR RECONSIDERATION OF ORAL RULING GRANTING MOTION FOR COURT DETERMINATION OF THE APPLICABILITY OF THE AUTOMATIC STAY OR ALTERNATIVELY FOR ANNULMENT OF THE AUTOMATIC STAY AND (2) MOTION FOR STAY PENDING APPEAL/RECONSIDERATION AND REQUEST FOR EX PARTE RULING*

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

THIS CASE came on for hearing on March 19, 2003 ("Hearing"), on the Debtor's Emergency Motion for Reconsideration of Oral Ruling Granting Motion for Court Determination of the Applicability of the Automatic Stay, or Alternatively for Annulment of the Automatic Stay by William R. Hobson (Doc. No. 26) ("Motion")[1]

and the Debtor's Motion for Stay Pending Appeal/Reconsideration and Request for *Ex Parte* Ruling (Doc. No. 31) ("Motion for Stay"). For the reasons set forth below, both the Motion and the Motion for Stay are hereby denied.

*Findings of Fact*

The facts of this case are not disputed and are fairly simple. The Debtor filed her chapter 13 case on February 8, 2002, to prevent the foreclosure of her homestead ("Property"). At the time of the filing, a state court foreclosure case was pending and a final judgment of foreclosure had been entered. The filing stayed the sale of the Property pursuant to 11 U.S.C. § 362.

The plaintiff in the state court foreclosure case was the mortgagee holding the first mortgage on the Property—which was the United States of America, acting through the Rural Development, formerly known as Farmers Home Administration, United States Department of Agriculture ("USA"). The USA filed a claim (Claim No. 2) in this case in the amount of $58,571.65, including an arrearage consisting of numerous missed monthly payments of $351.00 totaling $9,375.25, as of the date of the bankruptcy filing. The USA and its state court counsel were the *only* entities listed as creditors by the Debtor in her schedules. On April 22, 2002, the USA filed a "Request for Notice" in which it requested "that any and all notices" in the case be sent to the specific address of its "Centralized Servicing Center" in St. Louis, Missouri.

In accordance with the procedures employed by the Court in all chapter 13 cases, an order was entered on March 6,

---

1. While titled a motion for reconsideration of the Court's "oral ruling," it should be noted that on March 13, 2003 (Doc. No. 28), the Court entered an order based on its oral ruling. Accordingly, the Court will treat the Motion as one to reconsider its order of March 13, 2003.

2002, requiring the Debtor to make pre-confirmation payments to Terry Smith, standing chapter 13 trustee ("Trustee"), of $262.00 per month pending confirmation of the case ("Pre–Confirmation Order") (Doc. No. 4). The Debtor defaulted in payments required by the Pre–Confirmation Order almost immediately by failing to make the payments due for May and June 2002. Consequently, the Trustee filed a motion to dismiss the case on June 27, 2002.

Following the procedures for dealing with defaults of this nature, the Court thereupon entered an order requiring the Debtor to make the July 2002 payment "on time" and cure the delinquencies by August 15, 2002 ("Cure Order") (Doc. No. 9). The Debtor failed to cure the delinquencies as required by the Cure Order. As a result, the case was dismissed on August 29, 2002 (Doc. No. 14) ("Dismissal Order"). The Dismissal Order provided that the effective date of the order was delayed ten (10) days to provide the Debtor an opportunity to convert the case to another chapter.

The Dismissal Order was served by the Court on the USA at both its Bartow address listed by the Debtor and at the address of its Centralized Service Center, and on the USA's state court counsel in Winter Haven. Based on the dismissal, the USA thereafter proceeded to reschedule the foreclosure sale for October 22, 2002.

On September 9, 2002, the Debtor filed her motion for reconsideration of the Dismissal Order. The sole ground stated for reconsideration of the Dismissal Order was that the Debtor "is in the position to immediately submit the required payment to the Chapter 13 Trustee, as evidenced by a copy of the Debtor's $262.00 payment attached hereto, and to thereafter timely service the Chapter 13 Plan in conformance with the [Pre–Confirmation] Order."

The $262.00 payment attached was one payment short of the two payments required by the Cure Order.

Inexplicably, the motion for reconsideration was not served by the Debtor on the USA, the sole creditor in the case. The court scheduled this motion for hearing on October 21, 2002, the day before the pending foreclosure sale. Consistent with this Court's procedures for service of notices of hearing, the notice (Doc. No. 16) regarding the hearing on the motion for reconsideration, followed the Debtor's service list and thus, the USA was not noticed of the hearing scheduled for October 21, 2002.

On September 27, 2002, the Debtor filed a Request for Hearing on an Expedited Basis (Doc. No. 17) to move the hearing to an earlier date because a foreclosure sale of the Debtor's homestead was scheduled for October 22, 2002. Again, this request was not served on the USA. In an order dated October 1, 2002 (Doc. No. 19), the court declined to reschedule the hearing date because it was already set prior to the scheduled foreclosure sale. Again, consistent with this Court's procedures, this order tracked the service of the emergency motion and was also not served upon the USA.

The motion for reconsideration was heard as scheduled on the Court's regular chapter 13 docket on October 21, 2002. In addition to the Debtor's motion, there were approximately 60 other cases scheduled for hearing at that time. The only parties to make an appearance in connection with the Debtor's motion for reconsideration were the Debtor and the Trustee. *Transcript of October 21, 2002, Hearing,* at 3. The Trustee did not oppose the motion but requested that the two-month delinquency be cured as a condition of reinstatement of the case. *Id.* Accordingly, without opposition, the Court orally granted the Debtor's motion to reinstate the

case conditioned upon repayment of the arrearages with the payment due in November 2002. *Id.* at 4.

Counsel for the Trustee stated that she would prepare the order granting the motion for reconsideration and requiring the cure of the past-due payments. No request was made by counsel for the Debtor to expedite the processing of that order as would ordinarily occur if a party were concerned about the need to obtain a court order because of some exigency (such as the imminency of a foreclosure sale set for the next day). In addition, no request was made that the Court's oral ruling be immediately effective pending entry of a written order, as sometimes occurs in emergency situations.

The USA was not aware of the hearing on the motion for reinstatement or the Court's oral ruling. Following the hearing of October 21st, no effort was made to contact the USA or its counsel to inform them of the Court's oral ruling. As a result, the foreclosure sale occurred as scheduled on October 22, 2002. William R. Hobson ("Hobson"), a third party without notice of the ruling on the reinstatement of the case, purchased the property for approximately $43,100, and a certificate of sale was issued to him that very day. Finally, on November 4, 2002, the order reinstating the case was entered. Following its regular procedures, the Court served the order reinstating the case on all the creditors, which in the Debtor's case consisted of the USA at both its Bartow address listed by the Debtor and at the address of its Centralized Service Center, and on the USA's state court counsel in Winter Haven.

On February 11, 2003, Hobson, through his attorney, filed a Motion for Court De-

termination of the Applicability of the Automatic Stay or Alternatively to Annul the Automatic Stay (Doc. No. 21) ("Hobson's Motion") seeking a determination that the automatic stay did not apply to the foreclosure sale of the Property, or alternatively to annul to automatic stay with respect to the state court foreclosure sale. The USA filed a joinder (Doc No. 23) to Hobson's Motion. The Court heard Hobson's Motion on March 4, 2003. Hobson's attorney appeared and argued that the automatic stay was not in effect at the time of the foreclosure sale. Counsel for Hobson also brought to the Court's attention at the March 4th hearing without contradiction that the Debtor had failed to make $3,790.88[2] in post-petition payments to the USA and that the Debtor had again failed to make two of her monthly payments to the Trustee.

Debtor's counsel appeared and argued that the automatic stay was effective on the date the Court made its oral ruling and that the sale was void as it was made in violation of the automatic stay. At the March 4th hearing, the Court ruled in favor of Hobson, and on March 12, 2003, the Debtor filed this Motion for reconsideration. On March 13, 2003, the order memorializing the Court's March 4th oral ruling was entered on the docket (Doc. No. 28). On the next day, March 14, 2003, the Debtor filed the Motion for Stay. The Court declined the Debtor's invitation to rule *ex parte* on the Motion for Stay and instead heard arguments at the Hearing.

*Legal Discussion*

A. *Whether the Court's Oral Ruling was Effective Immediately.*

■ Hobson argues that the case was not reinstated and the automatic stay was

---

**2.** While Debtor's counsel did object to the Court's consideration of the schedule of payments attached to Hobson's Motion at the Hearing on the Motion, the Debtor did not object at the March 4th Hearing to any of the proffers regarding the Debtor's delinquent payments as scheduled in Hobson's Motion.

not in place when the foreclosure sale occurred on October 22, 2002; rather, the stay was not reinstated until the entry of this Court's order on November 2, 2002. The Debtor argues that the case was reinstated and the automatic stay was in effect immediately at the time of the Court's oral ruling on October 21, 2002. In support of the Debtor's position, the Debtor cites to *In re Nail,* 195 B.R. 922 (Bankr.N.D.Ala. 1996). The *Nail* case involved somewhat similar but distinguishable circumstances. The debtor's case in *Nail* was dismissed and the debtor similarly filed a motion to reinstate the case. The written order was entered later. In the interim, the creditor who had received notice of and, in fact, had attended the hearing of the motion to reinstate the case, nevertheless foreclosed upon the debtor's residence. *Id.* at 923–24. Facing a similar legal question, the court in *Nail* held that the court's oral order granting the debtor's motion to reinstate the stay was effective when made and immediately resurrected the automatic stay. Thus, the court held that the foreclosure sale was void. *Id.* at 931–32.

There are important factual differences between the one the Court is faced with herein and the one faced by the *Nail* court. First and foremost, the critical distinction arises in the area of due process. As admitted by the Debtor, the mortgagee, USA (and sole creditor scheduled in this case), was never served with the Debtor's motion to reinstate the case or the Debtor's emergency motion to reschedule the October 21st hearing date. The whole point of reinstating the case was to stop the foreclosure sale set for the *day after* the court's hearing on the Debtor's motion to reinstate the case. The Debtor had deemed the matter such an emergency that she sought to reschedule the hearing to an earlier date. The Court had declined to reschedule the matter because it was the Court's determination that the initial hearing date was adequate. This Court is very accommodating to parties who require orders on such matters on a very expedited basis. In emergencies, the Court has been able to sign and enter orders and provide copies of the orders on the very day of a scheduled hearing.

Another very important factual difference from *Nail* is the local practice of the Northern District of Alabama (Western Division) bankruptcy court. As can be gleaned from the *Nail* decision, the bankruptcy courts' oral rulings in that district are reduced to writing at the time of the hearing by the courtroom deputy and docketed in the file. Consistent with this practice, a computer record of the court's oral ruling in *Nail* was immediately generated after the hearing, and a paper copy of that entry was placed in the official file. *Id.* at 932. No such comparable procedure exists in this district. No public record exists so soon after a court's oral ruling. This explains, in part, the practice of rushing orders on emergency motions through the court system or bringing such orders to a hearing where emergency circumstances exist.

The Debtor acknowledges that she failed to serve the USA and does not contest the fact that neither Hobson nor the USA had any notice of the reinstatement of the case until the Court served the USA copies of the order reinstating the case. The Debtor's only argument regarding this defect is that the Court and the Trustee failed at the October 21st hearing to object to the failure to serve the USA. Additionally, the Debtor argues that the Court served the order reinstating the case upon all creditors, thereby curing any notice defects and making the order reinstating the case a final, non-appealable order. This argument misses the point.

It is incumbent upon a movant seeking relief from this Court to ensure proper service to all interested parties so that there are no due process concerns that may cloud any relief that may be obtained from the Court. If the USA had been properly served at the outset, had attended the hearing, and had heard the Court's ruling, and notwithstanding the Court's ruling, had rushed to conclude the foreclosure sale before a written order was entered, this Court would rule differently. However, at the time of the foreclosure sale, no party had actual notice of the reinstatement, and no party could have had constructive notice. Unlike the creditor in *Nail*, without a written order, there is no ready public method for the USA to determine the Court's oral ruling. The public record at the time of the sale showed a dismissed case.

Moreover, the fact that the USA or Hobson failed to appeal the reinstatement of the case is not relevant to this Court's analysis. Neither Hobson nor the USA is seeking to dismiss the case. They are merely seeking to determine if the automatic stay was in effect at the time of the sale or in the alternative, to annul the automatic stay.

Even the court in *Nail* recognized the importance of a written order. *Id.* at 930:

> Preparing written orders is of course a necessary part of any judicial determination.... The Federal Rules of Bankruptcy Procedure contain requirements that orders should be entered and should be written....the reasons for those requirements are that, '[o]rders do not become final until they are docketed. The reasons for respecting finality of judgments do not apply to undocketed

orders. They cannot be enforced. They cannot be appealed. Hence, judges may change their decisions until they are docketed.' (citing to *American Precision Vibrator Co. v. National Air Vibrator, Co. (In re American Precision Vibrator Co.)*, 863 F.2d 428 (5th Cir.1989)).

In *American Precision*, the clerk's office belatedly docketed the debtor's opposition to a motion for dismissal of the case. The court in the interim granted the motion and orally dismissed the case. Before the order was docketed, the Court considered the opposition and denied the motion to dismiss. Both orders were entered the same date. *American Precision*, 863 F.2d at 432. The district court ruled that the bankruptcy court lost jurisdiction over the case when it was dismissed, but the Fifth Circuit disagreed. As noted, it held that the bankruptcy court retained jurisdiction over a bankruptcy case until the order of dismissal had been docketed and entered. *Id.* at 428.

Courts have recognized this general rule that orders are not effective until written. *In re Beatty*, 162 B.R. 853, 857–58 (9th Cir. BAP 1994) (ruling of court regarding conversion of case is effective when written and docketed); *In re Tim Wargo & Sons, Inc.*, 107 B.R. 622, 625 (Bankr.E.D.Ark.1989) ("It is well settled that a court's oral rulings are not 'operative upon utterance.'"); *In re Rebeor*, 89 B.R. 314, 320 (Bankr.N.D.N.Y.1988) (oral ruling dismissing case is not operative upon utterance). As noted even by the *Nail* court in a footnote, some courts are of the view that the law is well settled that a court's oral ruling is not operative upon utterance. *Nail*, 195 B.R. at 929, fn. 9 (citations omitted).[3]

---

**3.** At the Hearing, the Debtor argued that cases adhering to the general rule are primarily concerned with finality of orders because of the timing to appeal. However, these cases cited are not primarily focused on the appeal process but on the practical effects in a bankruptcy case. Any analogy by the Debtor regarding how reinstating a bankruptcy case

One of the driving concerns the *Nail* court considered was that creditors who get notice of a motion to reinstate a case should not be allowed to circumvent the court's oral rulings reinstating the case and sell the debtor's homestead before a written order could be docketed. Clearly, this is not the situation presented here. The USA was not notified of the hearing to reinstate the case. It was not informed when the Court orally ruled that the case was reinstated. Thus, the USA was not and could not have been attempting to circumvent this Court's ruling. Accordingly, the Court does not find any reason to deviate from the well-accepted rule that orders are effective when written and docketed. It then follows that the foreclosure sale occurred when the case was still dismissed and the sale was not in violation of the automatic stay.

B. *Equitable Considerations to Set Aside Foreclosure Sale.*

■ The Debtor urges this Court to follow *Nail* and set aside the foreclosure sale for equitable reasons. *Nail,* 195 B.R. at 932 ("to allow the drastic relief of foreclosure of a residence simply because of a technical shortcoming of the court would be inequitable."). In any foreclosure situation, the Court is always sympathetic to the plight of a debtor losing his or her homestead. However, this situation presents equitable considerations that the Court must consider in favor of Hobson. Here is a third-party purchaser, who in good faith was the successful bidder of the Property. There was no notice given to any of the parties at the foreclosure sale of the reinstatement of the case. Even though there was no order entered as yet, there is no evidence that the Debtor attempted to contact the USA to stop the foreclosure sale. A telephone call would have put the USA on actual notice of the reinstated case. In fact, no notice was given until the Court served the order reinstating the case to all the creditors. By that time, the certificate of sale had already been issued. Once the certificate of sale was issued, the Debtor lost her opportunity to cure the arrearages and reinstate the mortgage in a chapter 13 case. *In re Jaar,* 186 B.R. 148 (Bankr. M.D.Fla.1995).

The Debtor asserts that she had no control over the timing of the order. However, that need not have been the case. As mentioned previously, if the Debtor had requested, the Court would have gladly allowed the Debtor to submit the order the very day of the hearing and would have, as is the Court's routine practice on emergency matters, ensured that the order was entered that very day. Hobson has already paid cash for the Property at the foreclosure sale, and to avoid the sale when the innocent third-party purchaser for value had no actual or constructive knowledge of the reinstatement of the case would have a chilling effect on properly conducted foreclosure sales.

Moreover, the Debtor has a history of post-petition delinquencies in her payments to the Trustee as well as to the mortgagee. To undo the foreclosure sale, held in accordance with state law requirements, would be inequitable to the mortgagee when it thought that it had severed the relationship with the Debtor. On balance, the Court does not find that the equities favor the Debtor to avoid the foreclosure sale.

and the resurrection of the automatic stay is akin to a temporary restraining order ("TRO") is diluted when one considers that in a typical TRO case, whenever possible, the affected parties are provided notice of the TRO motion and an opportunity to participate at the hearing. Here, no notice was given.

## C. Cause to Lift the Automatic Stay.

 Alternatively, there are independent grounds to lift the automatic stay to allow Hobson to complete his eviction. In this regard, Hobson argues that the automatic stay should be lifted for "cause." Bankruptcy Code section 362(d)(1) permits the court to terminate the automatic stay for "cause, including the lack of adequate protection of an interest in property . . ." "Cause" is not defined in the Bankruptcy Code, so whether "cause" exists for relief from the stay must be decided by examining the totality of circumstances in each case. *In re Aloisi*, 261 B.R. 504, 508 (Bankr.M.D.Fla.2001) (citations omitted). Pursuant to section 362(g), the debtor has the burden of proof on all issues with respect to a motion for relief from stay except the issue of the debtor's equity in the property. 11 U.S.C. § 362(g); *In re Cobblestone Associates*, 141 B.R. 245, 247 (Bankr.M.D.Fla.1992) (the burden allocated is not only of proof but also of persuasion). The debtor "must present evidence that an effective reorganization is realis-

tically possible . . . ." *Cobblestone*, 141 B.R. at 248. The Debtor failed to meet her burden in this case.

The Debtor has a history of delinquencies in Court-ordered payments throughout the pendency of this case. Moreover, the Debtor is still delinquent in her payments to the Trustee as of the Hearing. This delinquency continues despite reinstatement of her case. Her payment history to the USA has also been similarly unsatisfactory. Specifically, she has been delinquent in her post-petition payments to the mortgagee.[4] She owes a pre-petition arrearage of $9,375.25, as set forth in the USA's verified claim timely filed with the Court. It appears that feasibility of the Debtor's chapter 13 plan is a major hurdle that the Debtor must overcome. No evidence was presented to the Court to explain her unsatisfactory post-petition payment history, and no evidence was presented regarding her present ability to feasibly perform under a chapter 13 plan. Accordingly, the Court will lift the automatic stay for cause.[5]

**4.** As noted above, at the Hearing (unlike at the March 4th hearing), the Debtor's counsel objected to the use of the Debtor's payment history as scheduled in Hobson's Motion. She contested these figures because they were not in the form of an affidavit. However, no contrary evidence was provided that the Debtor was current in making her post-petition payments to the USA. When asked if the Debtor's counsel had evidence of any more payments made by the Debtor, the response was a general denial of any knowledge on the part of Debtor's counsel of the Debtor's recent payment history. It should be noted that Debtor's counsel attempted to explain that the lack of payment was due to the foreclosure sale of the property in October. After the sale, the Debtor allegedly did not have any party to direct her payments to. However, Hobson's attorney pointed out that a payment was made to and accepted by the USA in December 2002, two months after the sale. In this Court's opinion, there can be no dispute that this Debtor's post-petition payment

history to both the Trustee and the USA has been spotty, at best.

**5.** At the March 4th hearing, the Court had initially ruled that in addition to the reasons cited herein, that the sale cannot be avoided pursuant to 11 U.S.C. § 549(c). *In re Bago*, 149 B.R. 610 (Bankr.C.D.Ca.1993) (under factually identical circumstances, the court in *Bago* held that the foreclosure sale of the debtor's homestead, sold without knowledge of the reinstatement of the case, for a purchase price paid at a regularly conducted foreclosure sale was not violative of the automatic stay and could not be avoided). The Debtor in her memorandum cited to *In re Mitchell*, 279 B.R. 839 (9th Cir. BAP 2002) for the proposition that § 549(c) is inapplicable for validating a post-petition foreclosure, sold without notice of the debtor's bankruptcy. The *Mitchell* case noted that courts have ruled differently when confronted with this issue. Upon further reflection, this Court declines to rule on the applicability of § 549(c)

*Motion for Stay Pending Appeal*

 In determining whether to grant a stay pending appeal, the Court must consider four factors, including: (1) whether movant has made a showing of likelihood of success on the merits; (2) whether Movant has made a showing of irreparable injury if the stay is not granted; (3) whether granting of the stay would substantially harm the other party, and (4) whether the granting of the stay would serve the public interest. *In re Bilzerian,* 264 B.R. 726, 729 (Bankr.M.D.Fla.2001) (citations omitted), *aff'd,* 276 B.R. 285 (M.D.Fla.2002). The moving party must show satisfactory evidence on all four criteria, and the failure to satisfy one prong is fatal to the motion. *Id.* (citations omitted).

As to the first factor, substantial likelihood on the merits, for the reasons stated above, the Court concludes that there is not a likelihood that the Debtor will be successful on the merits of an appeal. As to the second prong, the Debtor can meet this showing. It is evident that the denial of the stay will cause the Debtor to be dispossessed of the Property. As to the third factor, the granting of the stay will prejudice Hobson, an innocent third-party purchaser of the property. Hobson has expressed fear that the Debtor may cause damage to the premises if he is unable to timely obtain possession while the Debtor continues to reside in the Property during the pendency of her appeal.

As to the fourth factor, the Court is of the opinion that the granting of the stay will not serve the public interest. The public is instead served by ensuring that properly conducted state court foreclosure sales are not disrupted by unnoticed reinstatements of the automatic stay. General due process concerns weigh in favor of

in this case because it has already reached the

Hobson and the USA, as well as the public. To allow the Debtor to challenge the validity of a properly held and conducted state court foreclosure sale when she sat on the sidelines and failed to notice anyone of the reinstatement of her case is to undermine concerns of due process and reward the Debtor's unjustified inactions. Accordingly, for the reasons stated above, it is:

ORDERED:

1. The Motion is denied.

2. The Motion for Stay is denied.

merits on other grounds.