### In re MIAMI BEACH HOTEL INVESTORS LLC, Debtor.

No. 03–41340–BKC–AJC.

United States Bankruptcy Court, S.D. Florida, Miami–Dade Division.

Jan. 22, 2004.

Francis Carter, Ferrell, Schultz, Carter, Zumpano & Fertel, Miami, FL, for Miami Beach Hotel Investors LLC.

John B. Hutton, Greenberg Traurig, P.A., Miami, FL, for LR5A–JV Limited Partnership.

## MEMORANDUM OPINION RE VALUE OF THE SOVEREIGN HOTEL

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the Court for evidentiary hearing on December 23, 2003, to determine the value of the Debtor's primary asset, the Sovereign Hotel. Adequate notice was given. The Court having received testimony from John Lancet, the Debtor's expert appraiser, Thomas O'Neill, the expert appraiser for LR5A–JV Limited Partnership (the "Secured Lender"), having observed the candor and demeanor of the witnesses, having admitted into evidence certain of the Debtor's and the Secured Lender's exhibits, having heard argument of counsel, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law:

On October 20, 2003, the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtor's primary asset is the Sovereign Hotel, a 105–room hotel, located at 4385 Collins Avenue, Miami Beach, FL 33140. The Sovereign Hotel was renovated in 1999 and is situated on the Atlantic Ocean on an .84–acre site. It was purchased by the Debtor in 2002 for approximately $8.5 million dollars.

The Secured Lender filed its Motion of Secured Creditor, LR5A–JV Limited Partnership, To: (A) Dismiss The Petition; Or In The Alternative, (B) Prohibit Use Of Cash Collateral And Grant Relief From The Automatic Stay (the "Motion to Dismiss"), on October 22, 2003. Argument on the Motion to Dismiss was scheduled to be heard on November 25, 2003. At that hearing, the Court determined that for purposes of the Motion to Dismiss, among other things, the value of the Sovereign Hotel was a substantial evidentiary issue in dispute and the determination of the Sovereign Hotel's value required a separate evidentiary hearing. An evidentiary hearing on the scope of the value of the Sovereign Hotel (the "Hearing") was therefore scheduled for December 23, 2003.

At the Hearing, the Secured Lender presented expert testimony by Thomas O'Neill, who valued the Sovereign Hotel at $6.75 million dollars. The Debtor presented expert testimony by John Lancet who valued the Sovereign Hotel at $8.9 million dollars. The Debtor moved into evidence Mr. Lancet's self-contained ap-

praisal report of the Sovereign Hotel (Debtor's Exhibit No. 1); a document the Secured Lender produced, from its own internal records, during discovery entitled "The Real Financial Partners Investment Summary" (the "Investment Summary") which valued the Sovereign Hotel at $8.6 million (Debtor's Exhibit No. 14)[1]; and the Miami–Dade County Ad Valorem Tax Bill for the subject property for 2003, which values the Sovereign Hotel at $8.82 million dollars (Debtor's Exhibit No. 16).

The Secured Lender moved into evidence Mr. O'Neill's summary appraisal report of the Sovereign Hotel (Secured Lender's Exhibit No. 1); Miami Beach Hotel Investors' LLC Financial Reports dated December 31, 2002 (Secured Lender's Exhibit No. 4); Miami Beach Hotel Investors' LLC Financial Reports dated April 30, 2003 (Secured Lender's Exhibit No. 5); Miami Beach Hotel Investors' LLC Financial Reports dated April 30, 2003 (Secured Lender's Exhibit No. 6), Miami Beach Hotel Investors' LLC Balance Sheet, dated October 31, 2003 (Secured Lender's Exhibit No. 7); and Miami Beach Hotel Investors' LLC Financial Reports, dated November 30, 2003 (Secured Lender's Exhibit No. 10). After weighing and analyzing the testimony and exhibits, the Court finds the testimony and methodology of Mr. Lancet to be very credible and further finds that the value of the Sovereign Hotel is $8.9 million dollars based upon Mr. Lancet's testimony, his appraisal report, and the other evidence of value introduced by the Debtor at the Hearing.

■ Both Mr. Lancet and Mr. O'Neill used two approaches to determine the market value of the Sovereign Hotel: the income capitalization approach ("income approach"), and the sales comparison approach. Each approach required reference to its own set of comparable properties. Both experts testified that they gave primary weight to the value indicated by the income approach because typical investors were more likely to rely upon the value indicated by that approach, and that they compared the value derived from the income approach to the range of values from the sales comparison approach to confirm the validity of their respective estimations of value.

The Court finds the comparable properties Mr. Lancet used for both approaches to be more appropriate than those selected by Mr. O'Neill's, and the capitalization rate that he relied upon to be reasonable and conservative. For the income capitalization approach Mr. Lancet used four comparable properties, three of which were ocean-front hotels, like the Sovereign, and two of those properties were actually located right next door to the subject property. Mr. Lancet used a capitalization rate of 11.3 percent. Mr. O'Neill, used a capitalization rate of 10 percent.[2] To determine the income and expense data to use in his appraisal, Mr. Lancet relied upon the most recent hotel operating statistics report (the

---

1. The Secured Lender's Investment Summary is a circular sent out by the Secured Lender to its investors about particular real estate investment opportunities—this one concerns the Sovereign Hotel. The Secured Lender strenuously objected to the admission of its Investment Summary as evidence on the grounds that the Secured Lender's internal estimations of the Sovereign's value is irrelevant. The Court disagrees and further notes that in Florida, an owner of property can

testify as to its value—the property in this case being the Secured Lender's mortgage. *See In re Cobblestone Associates,* 141 B.R. 245 (Bankr.M.D.Fla.1992); *State v. Hawthorne,* 573 So.2d 330 (Fla.1991).

2. The Court notes that had Mr. Lancet used the same capitalization rate as Mr. O'Neill, his estimate of value would have been substantially higher.

"Host Report") published by Smith Travel Research—a highly regarded and widely used resource for appraising hotels.[3]

By contrast, Mr. O'Neill did not utilize the Host Report for his income approach because the Host Report did not contain "boutique hotels", which, he testified were, as a class of hotels, good comparables for the Sovereign Hotel. Mr. Lancet testified, however, that the Sovereign Hotel is not similar to a boutique hotel. Mr. Lancet defined a "boutique hotel" as a smaller, uniquely designed independent hotel that provides a high level of service to its guests and has a signature restaurant on site. Mr. O'Neill also admitted that having a unique design is a common feature of a boutique hotel. The Court finds Mr. Lancet's definition of a boutique hotel persuasive and does not deem the Sovereign Hotel comparable to boutique hotels.

Mr. O'Neill would not identify to the Court which hotels he was using, making it difficult for the Court to ascertain whether or not the hotels Mr. O'Neill referred to are actually comparable. This opaqueness regarding the identity of Mr. O'Neill's comparables was also present in the testimony given by Mr. O'Neill during his deposition taken by Debtor's counsel prior to the Hearing. At the Hearing, Debtor's counsel read from the transcript of Mr. O'Neill's deposition:

> Q. The question was, "All right, for the purposes of us understanding your appraisal, if we don't know the names of the hotel, how are we supposed to determine whether or not they're comparable

to the Sovereign Hotel?"... Now I'm going to read your answer as it was taken by the court reporter. "A. It is just my judgment. You just have to accept my judgment because I don't identify it in our office. A lot of times, the people don't know which is which."

Mr. O'Neill denied giving that answer and asserted that the court reporter recorded his testimony inaccurately. Mr. O'Neill further admitted, however, that he was given a chance to read his deposition testimony, did in fact read his deposition testimony prior to the Hearing, and failed to notify the Secured Lender's counsel, Debtor's counsel, or the court reporter that his testimony had been recorded inaccurately. Mr. O'Neill's vagueness regarding the identity of his comparables and his dubious assertion that the testimony he gave under oath at his deposition was recorded inaccurately cast doubt upon his credibility as well as the accuracy and candor of his estimation of value.[4]

Mr. O'Neill's value derived from the income approach is well below the value range he reached using the sales comparison approach. Mr O'Neill's income approach yielded a value of $6.25 million dollars, while his sales comparison value ranged from $7.1 million to $10.5 million dollars. Despite the large disparity between the values, Mr. O'Neill adjusted his income value by only $0.5 million dollars, bringing his total value to $6.75 million dollars, well below and outside his own sales comparison value range. The low value derived from Mr. O'Neill's income approach is due in part to Mr O'Neill's

3. The Secured Lender relied upon Smith Travel Research reports in its own Investment Summary regarding the Sovereign Hotel.

4. Property valuation is not an exact science and experts can always find ways to disagree about methodology. It is not enough for a party to simply nit-pick the opposing expert's method—each appraiser's testimony is tested

for transparency and credibility. The Court's role is to sift through the myriad of methodological differences between the two experts' opinions and weigh all of the evidence, including testimony, to ascertain both the accuracy and credibility of each appraiser's value conclusion.

questionable reliance upon the pre-petition financial performance of the Sovereign Hotel. He testified that in preparing the income and expense data for his projections he relied upon the pre-petition performance of the Sovereign Hotel. He also relied upon the pre-petition performance of the Sovereign Hotel to calculate average occupancy and rate. The Sovereign Hotel, however, appears to have been mismanaged by its former management company and to have underperformed financially until November, 2003, when the Debtor replaced the former management company with Meyer Jabara, a competent and reputable management firm. Mr. O'Neill's reliance upon the Sovereign Hotel's pre-petition performance under the mismanagement of its previous manager therefore throws considerable doubt upon his projections and his resulting estimation of value.

For the sales comparison approach, Mr. Lancet, the Debtor's expert, used three comparable hotels, two of which were located near the Sovereign Hotel. Mr. Lancet testified that the most similar hotel to the Sovereign was another Miami Beach ocean-front hotel—the Traymore—which, Mr. Lancet testified, was currently under contract for $10.5 million. Mr. O'Neill also admitted that the Traymore is very comparable to the Sovereign but is an older hotel and is in an inferior condition to the Sovereign Hotel. Mr. O'Neill's comparables for his sales comparison approach are not as apposite as Mr. Lancet's. Mr. O'Neill admitted that only one of his comparables was actually an ocean-front hotel: the Traymore, which Mr. O'Neill valued at $5.95 million dollars despite the fact that he testified that the Traymore was in a better location than the Sovereign. His other comparables were either across the street from the beach or were located a block away from the beach on Collins Avenue. Further, Mr. O'Neill admitted that

many of his comparables, including his income approach comparables, were smaller than the Sovereign and did not have as many rooms as the Sovereign, even though he admitted there would be economies of scale that would make a larger hotel's expenses per room less than that of a smaller hotel. In fact, only one of his Mr. O'Neill's comparables had near the same amount of rooms as the Sovereign Hotel.

Mr. Lancet's estimation of value is supported by the other persuasive evidence of value introduced by the Debtor at the Hearing. The first is a document produced by the Secured Lender to the Debtor during discovery entitled "The Real Financial Partners Investment Summary," a circular sent out by the Secured Lender to its investors about particular real estate investment opportunities. This investment summary, produced by the Secured Lender during discovery and subsequently submitted by the Debtor to the Court, concerns the Sovereign Hotel and provides an estimation of value at approximately $8.6 million dollars—which the Court notes is close to Mr. Lancet's estimation of value.

The second piece of corroborative evidence submitted by the Debtor is the Miami–Dade County Ad Valorem Tax Bill for the subject property for 2003, which values the Sovereign Hotel at approximately $8.8 million dollars, including both real property and related personalty. *See In re Flagler–At–First Associates, Ltd.*, 101 B.R. 372 (Bankr.S.D.Fla.1989) (Cristol, J.) (taking into account tax assessor's value of property as corroborative evidence of appraiser's value conclusion). Again, the value conclusion reached by the tax assessor is almost identical to the value conclusion reached by Mr. Lancet. Finally, there is the amount that the Debtor itself paid for the property in an arms-length transaction in 2002: $8.5 million dollars.

While none of these pieces of evidence, viewed in isolation, is conclusive, together they certainly resonate with and lend substantial credence to Mr. Lancet's value conclusion of $8.9 million dollars. The Court, therefore, finds that the value of the Sovereign Hotel is $8.9 million dollars based upon Mr. Lancet's testimony, his appraisal report, the $8.6 million dollar value ascribed to the property by the Secured Lender in its investment summary, and the other evidence of value introduced by the Debtor at the Hearing.

So to recap in acrostic verse the Court's conclusion:

Every case has its own assets,
It's their value here decided.
Grasping theories and their facets,
High-priced experts have collided.
There's a mystery to appraisal,
Plying methods most arcane,
One good expert and this case'll
Immeasurably gain
Not just clarity but wisdom.
There is also credibility.
Not the one who tells us, "trust him,"
It's the other's sensibility.
Now for the value: listen, scholars!
Eight point nine million U.S. dollars.